IN THE MATTER OF: L.E.L. AND P.P.L., II
No. COA08-1055
Court of Appeals of North Carolina
Filed January 20, 2009
This case not for publication
Mary G. Holliday for petitioner-appellee Jackson County Department of Social Services.
Pamela Newell Williams, North Carolina Administrative Office of the Courts, for appellee guardian ad litem.
Michael E. Casterline for respondent-appellant.
ELMORE, Judge.
Respondent mother appeals from an order terminating her parental rights. Respondent's sole contention on appeal is that the trial court abused its discretion when it found that termination of her parental rights was in the best interests of the children. We affirm.
Respondent is the mother of juveniles P.P.L. and L.E.L. (the children). The Jackson County Department of Social Services (DSS) first came into contact with respondent's family in April 2005, based on reports of domestic violence and respondent's drug use. The children's father died from a drug overdose on 9 March 2006. On 22 June 2006, DSS filed petitions alleging that the children were neglected, took nonsecure custody of the children due to respondent's substance abuse, and placed the children in Broyhill Children's Home.
On 18 August 2006, respondent agreed to comply with the terms of a Family Services Agreement plan, including submitting to random drug testing, participating in alcohol and drug counseling and treatment programs, maintaining her sobriety, maintaining adequate housing and employment, attending parenting classes, and attending visitation with the children. On 23 August 2006, the court entered a consent order adjudicating the children neglected juveniles as defined in N.C. Gen. Stat. § 7B-101(15). The court ordered the children to remain in DSS custody and allowed respondent visitation.
On 18 October 2006, respondent pled guilty to credit card fraud and was placed on six months of intensive probation. According to a 15 November 2006 DSS court summary, the children remained in Broyhill because DSS could not find a relative placement for them. Respondent was still permitted to visit the children.
In fall 2006, respondent passed drug tests and attended alcoholics anonymous and narcotics anonymous meetings. Respondent also initially complied with the terms of her probation. As of the 15 November 2006 custody review hearing, respondent was attending treatment and participating in visitation with the children.
On 23 February 2007, however, respondent's probation officer informed DSS that respondent had tested positive for cocaine three times. On 9 May 2007, DSS recommended that the permanent plan be changed from reunification to adoption because respondent had suffered a "negative change in circumstances[.]" Respondent also had not contacted DSS since 9 March 2007, and failed to maintain suitable housing or employment or attend visitation with the children. Respondent then failed to personally appear at the custody review hearing. In an order entered 31 July 2007, based on the evidence heard at the 9 May 2007 hearing, the court concluded that the permanent plan should be changed to adoption and that DSS should cease reunification efforts.
On 12 May 2007, respondent was incarcerated for violating her probation. On 6 September 2007, DSS filed a petition to terminate respondent's parental rights. The petition alleged that respondent had neglected the children according to N.C. Gen. Stat. §§ 7B-101(15) and 7B-1111(a)(1) (2008) and that respondent had willfully left the children in foster care or placement outside the home for more than twelve months prior to the filing of the petition.
Respondent was released from prison on 21 September 2007. After she was released, respondent attempted to comply with her case plan by seeking drug addiction treatment and submitting to random drug tests and to mental evaluations. Respondent visited the children three times after her release from prison. Other scheduled visits were cancelled, however, when DSS could not find respondent.
In March 2008, respondent moved to Tennessee. Respondent was unable to continue therapy in Tennessee until she secured state funding. The case came on for hearing on the petition to terminate respondent's parental rights on 7 May 2008. At the hearing, the trial court concluded that sufficient grounds existed to terminate respondent's parental rights. Specifically, the trial court found as grounds for termination that respondent had neglected the children according to N.C. Gen. Stat. §§ 7B-1111(a)(1) and 7B-101(15) and had willfully left the children in foster care for more than twelve months without making reasonable progress toward correcting the conditions that led to their removal. The trial court also concluded that it was in the children's best interests to terminate respondent's parental rights, ordered DSS to place the children in an adoptive home, and placed the children in DSS custody.
Respondent's sole argument on appeal is that the trial court abused its discretion when it found that termination of parental rights was in the best interests of the children. We disagree.
Once the trial court has determined that a ground for termination exists, it moves on to the disposition stage, where it must determine whether termination is in the best interests of the children. N.C. Gen. Stat. § 7B-1110(a) (2007). The trial court's decision at this stage is reviewed for an abuse of discretion. In re Anderson, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002).
In determining the best interests of the children, the trial court must consider:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a) (2007).
Unchallenged findings of fact are binding on this Court. In re S.D.J., ___ N.C. App. ___, ___, 665 S.E.2d 818, 823-24 (2008) (citing Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal.")).
Here, the trial court's findings of fact support its conclusion that it was in the children's best interests to terminate respondent's parental rights. The trial court demonstrated that it considered the first statutory factor when it found that P.P.L. was twelve and in the sixth grade and that L.E.L. was ten and in the fourth grade.
As to the second and third factors, the likelihood of adoption and whether termination of parental rights would aid in accomplishing that goal, the trial court found:
11. That in the expert opinion of Don Zander, based upon the ages of the Juveniles, their personalities and his time spent in counseling with them, the Juveniles could form a bond with an adoptive family.
. . .
21. That Social Worker Susan Ward indicated from her professional observations that there is a reasonable likelihood of adoption of both Juveniles as a sibling group, because the Juveniles do not have behavioral problems and have good personalities. A termination of the Respondent Mother's parental rights would aid in accomplishing the plan of adoption by legally freeing the Juveniles for adoption. Adoption was previously ordered by this Court to be the permanent plan for these Juveniles.
The trial court made numerous findings addressing the fourth factor, the bond between respondent and children, including:
5. That Don Zander observed one visit between the Juveniles and the Respondent Mother. This occurred shortly after the Mother's release from the Department of Corrections. Don Zander noted that the Juveniles were excited to see their mother and the Court so finds as fact. He has counseled the Juveniles on other occasions regarding visits with their mother and has noted a lack of enthusiasm on the part of the Juveniles. [P.P.L.] explained that this was because the Respondent Mother has made many promises to the Juveniles that have never come to fruition, regarding issues such as the Mother promising to get a larger home and promising to find employment.
. . .
7. That in the expert opinion of Don Zander, the attachment of both Juveniles to the Respondent Mother is minimal.
8. That as time went on, after October of 2007, as some visits were missed by the Respondent Mother, the Juveniles' enthusiasm for the visits dampened further and the Juveniles would demonstrate anger and sadness over the missed visits.
. . .
22. That the Juveniles love their mother and have some bond with her, but this bond has been weakened because of her sporadic visits and her sporadic contact with them since they came into [DSS's] custody.
Finally, in addressing the fifth factor, the relationship between the children and a prospective adoptive parent or other permanent placement, the trial court found:
13. That [P.P.L.] has been in counseling with Don Zander since October 26, 2007[,] and [L.E.L.] since October 29, 2007. The Juveniles have been placed at Broyhill since June 22, 2006. The Juveniles have enjoyed a good relationship at Broyhill and are bonded together. . . . The Juveniles have a current visiting home resource through the Department of Social Services, the David and Jenny Porter foster family. The Juveniles have had three day visits with them that have gone well. The Juveniles have adjusted well to placement at Broyhill considering the stress and anxiety they have gone through waiting for the termination of parental rights hearing. The Juveniles have learned stress and anxiety reduction skills to teach them how to cope better with life circumstances.
The trial court also specifically found that it had considered all of the factors and that it was in the children's best interests to terminate parental rights:
24. That the Court cannot find that the Juveniles' best interest would be served by not terminating the Respondent Mother's parental rights.
25. That it would be in [the] best interest of both Juveniles for the parental rights of the Respondent Mother . . . to be terminated.
26. That the Court has considered all the factors enumerated in N.C.G.S. 7B-1110(a) in making the above determination, namely the ages of the Juveniles (Findings 9 and 10, above); the likelihood of adoption of the Juveniles (Findings 11, 14, and 20, above); whether termination of parental rights will aid in the accomplishment of the permanent plan for the Juveniles (Finding 21, above);the bond between the Juveniles and the Respondent Mother (Findings 5 through 8, 12 and 14, above); and the quality of the relationship between the Juveniles and any proposed adoptive placement (Finding 13, above).
In sum, we find that the trial court made findings of fact carefully addressed to all of the factors listed in N.C. Gen. Stat. § 7B-1110(a)(1-6). After examining the record, those unchallenged findings are supported by the evidence and are binding on appeal, and support the trial court's decision to terminate respondent's parental rights. Respondent's argument is without merit, and we affirm the order terminating respondent's parental rights.
Affirmed.
Judges MCGEE and STROUD concur.
Report per Rule 30(e).