IN THE MATTER OF: R.M.W., J.M.W.
No. COA08-1427
Court of Appeals of North Carolina
Filed April 7, 2009
This case not for publication
Jamie L. Hamlett for petitioner-appellee Alamance County Department of Social Services.
Pamela Newell Williams, North Carolina Administrative Office of the Courts, for guardian ad litem.
Richard Croutharmel for respondent-appellant mother.
ELMORE, Judge.
Respondent mother appeals from the trial court's order terminating her parental rights to juveniles R.M.W. and J.M.W. Respondent contends that the trial court erroneously concluded that grounds existed to terminate her parental rights and abused its discretion when it terminated her parental rights. We disagree.
The Alamance County Department of Social Services (DSS) became involved with the family on 16 May 2006 through the family assessment track. On 30 May 2006, DSS recommended family services based on allegations that respondent's substance abuse was creating an injurious environment for the juveniles. Respondent has failed to accurately identify the juveniles' father, and he is not a party to this appeal.
When DSS began in-home services in July 2006, respondent was incarcerated and the juveniles lived with respondent's aunt. When respondent was released from prison, she also lived with the aunt. Respondent and a social worker created a family services agreement that required respondent to (1) complete her probation and sign a release so that DSS could monitor her progress, (2) remain living with her aunt, (3) continue to receive services through the health department, (4) find a day care for the juveniles, and (5) receive an evaluation for and attend substance abuse treatment.
After her release from prison, respondent violated the terms of her probation by refusing drug screens, failing to perform community service, and failing to pay fees. Respondent also failed to appear in court or keep steady employment. Respondent's aunt complained to DSS that respondent did not help her with the juveniles and would leave home for long periods of time without disclosing where she went. Respondent also did not make appointments for the juveniles so that they could receive medical care.
On 28 February 2007, DSS filed petitions alleging that the juveniles were neglected. In a consent order entered 2 May 2007, the trial court found that the juveniles were neglected within the meaning of N.C. Gen. Stat. § 7B-101(15) and ordered DSS to continue to make reasonable efforts toward reunification. In a disposition order entered 18 June 2007, the trial court ordered respondent to cooperate with DSS and attend parenting classes and substance abuse counseling, maintain weekly visits with the juveniles, follow all the goals of her family services agreement, cooperate with DSS in establishing child support, and inform DSS of any changes in her living or employment status within forty-eight hours.
On 24 July 2007, respondent entered into an out-of-home family services agreement with DSS. The agreement set out a series of goals for respondent to accomplish, including the following: (1) "obtain and maintain employment for at least a 6 month period"; (2) "submit at least 5 job applications each week"; (3) contact the Employment Security Commission to assist with her job search; (4) "budget her income so that she can prove to be able to provide rent, utilities and other basic needs"; (5) "obtain and maintain appropriate, safe housing for at least a 6 month period"; (6) be able to pay her rent and utilities on time, so as not to risk being evicted or having the utilities turned off"; (7) notify her social worker of any changes of address or phone number within forty-eight hours of the change; (8) "attend a Substance Abuse assessment with Alcohol and Drug Services"; (9) "attend a Mental Health assessment"; (10) register for and cooperatively attend all sessions of a parenting class; (11) "be able to demonstrate appropriate parenting skills learned through the classes during visits with her children"; (12) visit her children weekly and abide by all aspects of the visitation schedule; and (13) provide support for her children by cooperating with the Alamance County Child Support Agency and contacting the office to discuss her case by 6 August 2007.
In November 2007, respondent scheduled a 4 December 2007 meeting with DSS to renew her family services plan, but did not attend the meeting. DSS did not have contact with respondent again until 14 May 2008. Respondent also did not follow through with drug and alcohol counseling, mental health treatment, or parenting classes. Respondent also did not visit with the juveniles or request visits after the petition was filed. In the seventeen months that the juveniles were in foster care, respondent attended fifteen visits out of a possible fifty-two.
On 28 March 2008, DSS filed petitions to terminate respondent's parental rights to both juveniles. DSS alleged four grounds for termination in each petition: (1) respondent had abused or neglected the juveniles; (2) respondent had willfully left the juveniles in foster care for more than twelve months without demonstrating reasonable progress to correct the conditions that led to their removal; (3) respondent willfully failed to pay child support during the six months prior to the filing of the petition; and (4) respondent willfully abandoned the juveniles for at least six months prior to the filing of the petition.
The case was heard on 16 July 2008. In the adjudication phase, social worker Christy Roessler described respondent's history with DSS. Respondent then testified that her housing situation was unstable until May 2008, when she moved in with her mother. Respondent stayed with various friends for "a month oruntil they get tired if it's over a month." On 15 June 2008, respondent submitted to drug and mental health assessments. Respondent presented evidence that she had submitted a negative drug screen. Respondent applied for several jobs after May 2008, but had not been hired. Respondent admitted that she did not apply for any jobs between May 2007 and May 2008.
After hearing the evidence, the trial court concluded that all four grounds alleged by DSS to terminate respondent's parental rights existed as to each juvenile. After hearing the disposition phase evidence, the trial court also concluded that it was in the juveniles' best interests to terminate respondent's parental rights. Respondent appeals.
First, we address respondent's contention that the trial court erred when it concluded that grounds existed to terminate her parental rights. We disagree.
In the adjudicatory stage, the burden is on the petitioner to prove that at least one ground for termination exists by clear, cogent, and convincing evidence. N.C. Gen. Stat. § 7B-1109(f) (2007); In re Blackburn, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). Review in the appellate courts is limited to determining whether clear and convincing evidence exists to support the findings of fact, and whether the findings of fact support the conclusions of law. In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000) . "[F]indings of fact made by the trial court . . . are conclusive on appeal if there is evidence to support them." In re H.S.F., 182 N.C. App. 739, 742, 645 S.E.2d 383, 384 (2007) (quotations and citation omitted ).
Although respondent challenges all four of the trial court's conclusions that grounds existed to terminate her parental rights, we note that she has only challenged finding of fact number fifty-nine, which states that respondent did not attend parenting classes or obtain substance abuse or mental health assessments and treatment. Thus, the remainder of the trial court's findings of fact are binding on this Court. See In re S.D.J., ___ N.C. App. ___, ___, 665 S.E.2d 818, 824 (2008) (citing Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).
The trial court concluded that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (2), (3), and (7) to terminate respondent's parental rights. However, a finding of one statutory ground is sufficient to support the termination of parental rights.In re Pierce, 67 N.C. App. 257, 261, 312 S.E.2d 900, 903 (1984)). The trial court's findings are sufficient to support termination of respondent's parental rights pursuant to § 7B-1111(a)(2), that respondent willfully left the juveniles in foster care for more than twelve months without making reasonable progress toward correcting the conditions that led to juveniles' removal from the home.
The trial court made numerous findings of fact that supported its conclusion that such grounds existed. At the time of the hearing, the juveniles had been in DSS custody since 27 February 2007. Respondent failed to accomplish any of the goals set out in her 24 July 2007 out-of-family home services agreement even though her social worker provided respondent with transportation to visitation, a list of income-based housing and shelters, job search assistance, and referrals to community resources such as parenting classes and mental health agencies.
The trial court found the following facts that support its conclusion that respondent willfully left the juveniles in foster care for more than twelve months without making reasonable progress toward correcting the conditions that led to their removal: Respondent "failed to meet any of the goals or objectives of the [24 July 2007] out-of-home family services agreement." Respondent "has struggled to meet her own basic needs." In November 2007, she had unstable housing, was not working, and reported "living here and there." Only on 28 May 2008 did respondent report finding housing with her mother. Respondent told her social worker that she pays $170.00 per month in child support for a third child and that she "does what she has to, to get the money." The child support office reported that respondent had not paid any child support for the third child since May 2007. Respondent has attended fifteen visitations with her children during the seventeen months that they have been in DSS care; she had the opportunity to attend fifty-two visitations. Respondent requested a special visitation to celebrate her birthday with her children. DSS arranged for a 1:30 to 2:30 pm visitation and prepared cake, ice cream, decorations, and gifts; respondent arrived at 2:15 pm, leaving only fifteen minutes for visitation. During a 17 September 2007 special meeting between respondent and the juveniles' foster parents, respondent "stated that she did not have any questions because [the juveniles] eat, sleep and poop like other children." Respondent had numerous problems attending the 11 am visitations, which required her to call the social worker by 9 am so that the social worker could drive the children the two hours for the visit. Respondent eventually asked DSS to schedule the visits for later in the day because it was too difficult to wake up by 9 am to call the social worker. DSS refused, explaining that 11 am was the best time for the children. Respondent has not visited the children or contacted her social worker since early November 2007, although her social worker has made numerous telephone calls to her. Respondent lives with her mother in Virginia and "has recently enrolled in school to pursue education in child development." However, she still does not have employment or independent housing. Respondent has "the ability to pay more than zero towards" the juveniles' care and has no "disability which would prevent her from working or earning money." Respondent acknowledged that she did not find housing or employment between May 2007 and May 2008.
Accordingly, the trial court's conclusion that respondent failed to make reasonable progress was well supported by its findings of fact.
Respondent also argues that the trial court abused its discretion by terminating her parental rights. We disagree.
Once the trial court determines that a ground for termination exists, it moves on to the disposition stage, during which it must determine whether termination is in the best interest of the child. N.C. Gen. Stat. § 7B-1110(a) (2007). The trial court's decision at this stage is reviewed for an abuse of discretion. In re Anderson, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002).
In determining the best interests of the child, the court must consider:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a) (2007).
Here, the trial court's order demonstrates that it considered the relevant factors. The trial court found that the juveniles were born in June 2005 and May 2006. The trial court also found that they "demonstrate love and bonding" with their foster family, who are willing and able to adopt the juveniles. The trial court found that the juveniles do not discuss their biological mother or family. Finally, the trial court found that the juveniles' permanent plan is adoption, and that terminating respondent's parental rights would help effectuate that plan. Accordingly, we find that the trial court made sufficient findings to support its determination that termination of respondent's parental rights is in the juveniles' best interests, and we affirm the trial court's order terminating respondents' parental rights.
Affirmed.
Judges STEELMAN and GEER concur.
Report per Rule 30(e).