SIMON v. SIMON

[231 N.C. App. 76 (2013)]

―――――――――――――――――

JOANN C. SIMON, Plaintiff

v.

BRIAN R. SIMON, Defendant

No. COA13-249

Filed 3 December 2013

1. **Divorce—equitable distribution—value and classification of stock**

   The trial court did not err in an equitable distribution case by failing to make a finding as to the value of the TSCG C stock on the date of distribution. There is no statutory requirement under N.C.G.S. § 50-21(b) that marital property be valued on the date of distribution.

2. **Divorce—equitable distribution—classification of profit distributions**

   The trial court's classification in an equitable distribution case of the 2006 profit distributions received by defendant post separation as divisible property was remanded for further findings of fact. Unless defendant could sufficiently quantify the active post-separation component, the 2006 profit distribution should be classified as divisible property and distributed to plaintiff accordingly.

SIMON v. SIMON

[231 N.C. App. 76 (2013)]

Plaintiff's argument as to the 2007 profit distribution was without merit because her interest in the TSCG C stock ended on the date of separation and the parties were separated for the entirety of 2007.

**3. Divorce—equitable distribution—commission distribution**

The trial court's findings of fact and conclusions of law in an equitable distribution case were insufficient to support its denial of plaintiff wife's request to find all of the commissions presented at trial to be divisible. The trial court's decision to deny the admission of business records was error. Thus, this issue was remanded to the trial court for further findings of fact and a possible recalculation and reclassification of property. With regard to the classification of commissions earned after the date of separation, the trial court was instructed to make further findings of fact, and it was to consider the payment journals plaintiff attempted to enter into evidence at trial.

**4. Attorney Fees—failure to award—reasonable amount**

The trial court erred in an equitable distribution case by failing to award plaintiff wife reasonable attorney fees. This issue was remanded for a determination of reasonable attorney fees to be awarded to plaintiff.

**5. Costs—denial of expert witness fees—travel expenses —testimony**

The trial court did not err in an equitable distribution case by denying plaintiff wife's request for $6,651.40 for the costs associated with the travel expenses and testimony of certain expert witnesses.

Appeal by plaintiff from orders entered 12 January 2012, 8 August 2012, and 20 September 2012 by Judge Edward L. Hedrick, IV in Iredell County District Court. Heard in the Court of Appeals 11 September 2013.

*HAMILTON STEPHENS STEELE & MARTIN, PLLC, by Amy S. Fiorenza, for plaintiff.*

*No brief filed for defendant.*

ELMORE, Judge.

Joanne C. Simon (plaintiff) asserts that the trial court erred in 1) failing to properly classify property, 2) valuing certain marital and divisible marital property, and 3) declining to award her attorney's fees and

additional costs. Portions of the trial court's order are vacated, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

## I. Background

Plaintiff and Brian R. Simon (defendant) were married 30 March 1985 and divorced on 8 May 2008. Two children were born of the marriage. The parties separated on 16 September 2006. On 1 October 2007, plaintiff filed a complaint seeking, *inter alia*, temporary and permanent child custody, temporary and permanent child support, post-separation support, alimony, and equitable distribution of marital property.

On 12 January 2011, the trial court entered judgment on plaintiff's claims. It found that that an unequal distribution of marital property to plaintiff was equitable and awarded plaintiff $12,220 per month in alimony and $4,200 per month in child support.

Early in the parties' marriage, plaintiff earned a Bachelor's degree and worked in the field of commercial interior architecture earning $20,000 to $30,000 per year. In the 1990s defendant began working for the Shopping Center Group, Inc. as a salesman; he earned approximately $250,000 in 1993. In 1993, plaintiff stopped working to help defendant with administrative tasks related to his business. Shortly thereafter, plaintiff stayed home after the birth of the parties' first child. During the late 1990s to early 2000s, the Shopping Center Group of the Carolinas, a division of the Shopping Center Group, Inc., grew in the number of offices and employees. In 2002 the company restructured, and the Shopping Center Group, LLC (the Group) was formed. Defendant served as President of the Group from December 2004 to February 2008. As a shareholder of the Carolinas division, defendant received year-end profit distributions from the Group as part of his compensation. The trial court valued his shares of company stock (TSCG C stock) at $832,000 on the parties' date of separation.

In February 2008, defendant was terminated for malfeasance after having an inappropriate relationship with a company associate. As a result, defendant was required to sell the TSCG C stock at book value. On 7 March 2008 (the date of distribution), defendant sold the stock for $60,620.55; he was paid approximately $12,000 and was given a note for $48,496.44 plus interest at 8 percent annually. Defendant was terminated approximately three years short of his retirement. Should he have retired from the company, the buy-back value of his stock was estimated to be in the millions of dollars. After his termination, defendant

continued to work in the same field under the monikers of his companies HRS Retain and HRS Limited.

Plaintiff first appealed to this Court on 7 September 2012, while her claims for attorneys' fees and costs were pending. On 20 September 2012, the trial court denied her claim for attorneys' fees and granted her certain litigation costs. Plaintiff filed a second Notice of Appeal on 24 September 2012; she appealed: (1) the Equitable Distribution, Alimony and Permanent Child Support Order entered 12 January 2012, (2) the Order Re: the parties' Rule 59/60 motions entered 8 August 2012, (3) the Order on Plaintiff's Claim for Attorneys' Fees and Costs entered 20 September 2012, and (4) any intermediary orders affecting these Orders. Plaintiff's appeal is properly before us for our review. *See Duncan v. Duncan*, ___ N.C. ___, 742 S.E.2d 799 (2013).

## II.  Standard of Review

> Equitable distribution is vested in the discretion of the trial court and will not be disturbed absent a clear abuse of that discretion. Only a finding that the judgment was unsupported by reason and could not have been a result of competent inquiry, or a finding that the trial judge failed to comply with the statute N.C.G.S. §50-20(c)[], will establish an abuse of discretion.

*Wiencek-Adams v. Adams*, 331 N.C. 688, 691, 417 S.E.2d 449, 451 (1992) (citations omitted). This is a "generous standard of review," *Robinson v. Robinson*, 210 N.C. App. 319, 322, 707 S.E.2d 785, 789 (2011); however, the trial court must still comply with the three step analysis set forth in N.C. Gen. Stat. § 50-20(c):

> First, the court must identify and classify all property as marital or separate based upon the evidence presented regarding the nature of the asset. Second, the court must determine the net value of the marital property as of the date of the parties' separation, with net value being market value, if any, less the amount of any encumbrances. Third, the court must distribute the marital property in an equitable manner.

*Smith v. Smith*, 111 N.C. App. 460, 470, 433 S.E.2d 196, 202-03 (1993) (citations omitted), *rev'd in part on other grounds*, 336 N.C. 575, 444 S.E.2d 420 (1994).

> The first step of the equitable distribution process requires the trial court to classify *all* of the marital and divisible

property—collectively termed distributable property—in order that a reviewing court may reasonably determine whether the distribution ordered is equitable. In fact, to enter a proper equitable distribution judgment, the trial court must specifically and particularly *classify and value all assets and debts maintained by the parties at the date of separation.* In determining the value of the property, the trial court must consider the property's market value, if any, less the amount of any encumbrance serving to offset or reduce the market value. Furthermore, in doing all these things the court must be specific and detailed enough to enable a reviewing court to determine what was done and its correctness.

*Robinson,* 210 N.C. App. at 323, 707 S.E.2d at 789 (citations and quotations omitted) (emphasis in original). Marital property is to be valued as of the date of separation and is defined to include "all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of separation of the parties[.]" N.C. Gen. Stat. § 50-20(b)(1) (2011). Divisible property includes all "appreciation and diminution in value of marital property and divisible property of the parties occurring after the date of separation and prior to the date of distribution," unless that appreciation or diminution in value is the direct result of the post-separation actions or activities of one spouse. N.C. Gen. Stat. § 50-20(b)(4) (2011). "[A]ll appreciation and diminution in value of marital and divisible property is presumed to be divisible property *unless* the trial court finds that the change in value is attributable to the postseparation actions of one spouse." *Wirth v. Wirth,* 193 N.C. App. 657, 661, 668 S.E.2d 603, 607 (2008) (emphasis in original).

### III. Failure to Classify Property

In plaintiff's first three arguments, she contends that the trial court erred by not making findings of fact regarding divisible property, by not correctly valuing divisible property, and by incorrectly classifying property as defendant's separate property. We agree with plaintiff on several of her arguments, but disagree as to others.

### A. Value and Classification of Stock

[1] Plaintiff's first argument is twofold. First, she avers that the trial court erred by failing to make a finding as to the value of the TSCG C stock on the date of distribution; according to plaintiff, that value is $960,000. Given this valuation, plaintiff next argues that the trial court

erred in failing to classify the $128,000 increase in value from the date of separation to the date of distribution as divisible property. We disagree.

> North Carolina has not enacted or adopted any definitive approaches for valuing stock rights. . . . *The award shall be based on the vested and non-vested accrued benefit, as provided by the plan or fund, calculated as of the date of separation,* and shall not include contributions, years of service, or compensation which may accrue after the date of separation.

*Ubertaccio v. Ubertaccio*, 161 N.C. App. 352, 356-57, 588 S.E.2d 905, 909 (2003) (citations and quotations omitted) (emphasis in original).

The trial court made the following finding of fact:

> 55. The Plaintiff hired an expert to value the stock. The expert was well-educated and experienced. He appropriately weighed different valuation approaches and researched the company and the industry. The expert factored into his opinion the discounts for risk, the size of the company, the lack of control and lack of marketability. The stock was acquired during the marriage and it existed on the date of separation and was marital property. The court finds that the value of the stock on the date of separation was $832,000.00.

The trial court is required to classify, value, and distribute marital and divisible property of the parties. Accordingly, it classified the shares of TSCG C stock as marital property and accepted the expert's valuation of $832,000 at the date of separation. In doing so, the trial court complied with N.C. Gen. Stat. § 50-21(b), which specifically provides that marital property is to be valued as of the date of separation. There is no statutory requirement that marital property be valued on the date of distribution. N.C. Gen. Stat. § 50-21(b) (2011).

Assuming *arguendo* that we remanded this issue, the trial court would be under no obligation to accept plaintiff's expert's valuation for the stock of $960,000 on the date of distribution merely because it used his valuation of $832,000 on the date of separation. Plaintiff's argument is purely speculative – her alleged $128,000 increase in stock value between the date of separation and the date of distribution does not exist. Accordingly, we affirm the portion of the trial court's order dealing with the classification and valuation of the TSCG C stock.

## B.  Classification of Profit Distributions

**[2]**  Plaintiff next contends that the trial court erred by not classifying the 2006 and 2007 profit distributions received by defendant post-separation as divisible property.  We remand for further findings of fact.

Under N.C. Gen. Stat. § 50-20(4), divisible property includes passive income from marital property, such as interests and dividends. N.C. Gen. Stat. § 50-20(4) (2011). "Profits of a Subchapter S corporation are owned by the corporation, not by the shareholders, and are referred to as 'retained earnings.' . . . [I]ncome is allocated to shareholders based upon their proportionate ownership of stock. . . . [R]etained earnings of a corporation are not marital property until distributed to the shareholders." *Allen v. Allen*, 168 N.C. App. 368, 375, 607 S.E.2d 331, 336 (2005) (quotations and citations omitted). "[F]unds received after the separation may appropriately be considered as marital property when the right to receive those funds was acquired during the marriage and before the separation." *Id.* at 374, 607 S.E.2d at 335 (citation omitted). "Active appreciation" refers to the substantial "financial or managerial contributions" of one of the spouses. *O'Brien v. O'Brien*, 131 N.C. App. 411, 420, 508 S.E.2d 300, 306 (1998).

In *Allen, supra*, we held that the retained earnings of a Subchapter S corporation were properly classified as a non-marital asset when the profits represented a component of the book value of the corporation and there was no evidence that either party actually received a distribution. Conversely, here the parties filed a joint tax return for 2006, and defendant claimed he received $442,436 in non-passive income derived from his ownership interest in a Subchapter S corporation.

Here, the trial court found that "the income from the TSCGC stock received after the date of separation is not divisible property" because "[d]efendant was required to maintain his employment and the distribution of profits was directly related to [d]efendant's performance in the company." We note that the $442,436 profit distribution was tied to the amount of TSCG C stock defendant owned, and this stock was classified by the trial court as marital property. Shares of stock represent "title" to property, but title is not controlling in determining whether an asset is marital property. One aim of the Equitable Distribution Act was "to alleviate the unfairness of the common law [title theory] rule" and to base property distribution instead upon "the idea that marriage is a partnership enterprise to which both spouses make vital contributions[.]" *Friend-Novorska v. Novorska*, 131 N.C. App. 508, 510, 507 S.E.2d 900, 902 (1998).

The trial court was first tasked with classifying the income earned from the stock after the date of separation as marital or separate in accordance with the definitions set forth in N.C. Gen. Stat. § 50-20(b). It did not do so. Additionally, before classifying the property, it would have been advantageous of the trial court to consider how the 2006 profit distribution was generated as a distributional factor under N.C. Gen. Stat. §§ 50-20(c)(1) and (12), specifically looking to whether it was compensation for both pre and post-separation labor.

From the record it appears that the trial court's intention was to classify the 2006 profit distribution as defendant's separate property because he was "required to maintain his employment" and the distribution of profits was directly related to his performance. Defendant bears the burden of showing the property should be classified as separate property. *See Joyce v. Joyce*, 180 N.C. App. 647, 650, 637 S.E.2d 908, 911 (2006) ("A party who claims a certain classification of property has the burden of showing, by the preponderance of the evidence, that the property is within the claimed classification."). Defendant testified that he played no role in the financial management of the Shopping Center Group of the Carolinas in regards to profit distributions, and the record is devoid of other evidence to support the finding that the 2006 profit distribution was derived solely from defendant's financial or managerial contributions.

The parties did not separate until September 2006, and defendant's interest in the 2006 distribution may have been acquired, in part, due to pre-separation labor. The fact that defendant received the 2006 distribution after the parties separated is irrelevant if the right to receive those funds was acquired during the marriage. *See Allen, supra.* We remand this issue to the trial court for further findings of fact. Unless defendant can sufficiently quantify the active post-date of separation component, the 2006 profit distribution should be classified as divisible property and distributed to plaintiff accordingly. Plaintiff's argument as to the 2007 profit distribution is without merit because (1) her interest in the TSCG C stock ended on the date of separation, and (2) the parties were separated for the entirety of 2007.

## C. Commission Distribution

[3] Plaintiff argues that the trial court's findings of fact and conclusions of law were insufficient to support its denial of her request to find all of the commissions presented at trial to be divisible. We agree.

The conclusion that property is marital, separate, or non-marital must be supported by written findings of fact. "Appropriate findings of fact include, but are not limited to, (1) the date the property was

acquired, (2) who acquired the property, (3) the date of the marriage, (4) the date of separation, and (5) how the property was acquired (i.e., by gift, bequest, or purchase)." *Hunt v. Hunt*, 112 N.C. App. 722, 729, 436 S.E.2d 856, 861 (1993). "The purpose for the requirement of specific findings of fact that support the court's conclusion of law is to permit the appellate court on review "to determine from the record whether the judgment — and the legal conclusions that underlie it — represent a correct application of the law." *Patton v. Patton*, 318 N.C. 404, 406, 348 S.E.2d 593, 595 (1986) (citation and quotation omitted).

The trial court made the following finding:

> 57. The Defendant received commissions after the date of separation which were in different stages of completion due to efforts prior to the date of separation. With the exception of the following commissions, the Plaintiff failed to prove that those commissions received after the date of separation were due to the efforts of the Defendant during the marriage and therefore divisible. The following commissions received after the date of separation were due to the efforts of the Defendant during the marriage and therefore divisible property: (1) Bed, Bath & Beyond-Mooresville, $20,000.00; Aiken $18,000.00; Greensboro, $20,000.00; Knightdale, $15,000.00; and Rocky Mount, $15,000.00. The total divisible property value is $88,000.00 and should be distributed to the Defendant.

The concerning issue before us is the somewhat arbitrary nature of the trial court's classification and distribution of certain commissions defendant earned post-separation. We instruct the trial court to consider the payment journals that plaintiff sought to introduce into evidence at trial because these documents were admissible under the business records exception to the hearsay rules.

A qualifying business record is admissible when "a proper foundation . . . is laid by testimony of a witness who is familiar with the . . . records and the methods under which they were made so as to satisfy the court that the methods, the sources of information, and the time of preparation render such evidence trustworthy." *State v. Springer*, 283 N.C. 627, 636, 197 S.E.2d 530, 536 (1973). There is "no requirement that the records be authenticated by the person who made them." *In re S.D.J.*, 192 N.C. App. 478, 482-83, 665 S.E.2d 818, 821 (2008) (quotation and citation omitted). The foundational requirements of Rule 803(6) may be satisfied through the submission of

> [a]n affidavit from the custodian of the records in question
> that states that the records are true and correct copies of
> records made, to the best of the affiant's knowledge, by
> persons having knowledge of the information set forth,
> during the regular course of business at or near the time
> of the acts, events or conditions recorded[.]

*Id.* at 483, 665 S.E.2d at 822 (quotation omitted).

Here, Judge Hedrick denied the admission of certain documents into evidence because they were being tendered by affidavit, not live testimony. He stated, "I'm inclined to read the rule fairly strictly since it's exception to the hearsay rule where it says 'through a — the testimony.' " He thus concluded, "I'm inclined to consider testimony from this witness stand through that microphone."

The record reflects that the foundational requirements of Rule 803(6) were satisfied through the submission of the affidavit from Jamie Alexandar-Greene. The affidavit provided that financial records of the Shopping Center Group, LLC were made and kept in the regular course of business by persons having knowledge of the information set forth at or near the time of the acts, events, or conditions recorded. The trial court's decision to deny the admission of the business records was error. Accordingly, we remand this issue to the trial court for further findings of fact and a possible recalculation and reclassification of property.

## IV. Attorney Fees

**[4]** Plaintiff argues that the trial court erred in failing to award her reasonable attorneys' fees. We agree.

Plaintiff sought attorneys' fees in connection with her claims for child custody, child support, and alimony. In a child custody or child support action, "the court may in its discretion order payment of reasonable attorney's fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit." N.C. Gen. Stat. § 50-13.6A (2011). Furthermore, any time that a dependent spouse is entitled to alimony pursuant to N.C. Gen. Stat. § 50-16.3A, "the court may, upon application of such spouse, enter an order for reasonable counsel fees, to be paid and secured by the supporting spouse in the same manner as alimony." N.C. Gen. Stat. § 50-16.4 (2011). In order to establish that a spouse is entitled to attorneys' fees, he or she must be "(1) the dependent spouse, (2) entitled to the underlying relief demanded (e.g., alimony and/or child support), and (3) without sufficient means to defray the costs of litigation." *Barrett v. Barrett*, 140 N.C. App. 369, 374,

536 S.E.2d 642, 646 (2000) (citation omitted). On appeal, the question posed is whether the trial court erred in concluding that plaintiff had sufficient means to defray the cost of litigation.

In its 20 September 2012 order, the trial court denied plaintiff's claims for attorneys' fees, finding she had "sufficient means" to defray the cost and expense of the suit as her separate estate was valued at $902,139.54. Plaintiff incurred legal expenses of approximately $288,091. Of that, not less than $89,436.89 was related to her claims involving child custody and child support, and not less than $40,953.03 was related to her claims for post-separation support and alimony. At the time of the hearing, plaintiff owed $180,000 in attorneys' fees — approximately $122,000 of which were recoverable by statute. *See* N.C. Gen. Stat. §§ 50-13.6A and 50–16.4.

A review of the records shows that, while plaintiff's estate appears ample, it consists entirely of assets received in equitable distribution, most of which are non-liquid. Additionally, plaintiff has no cash-on-hand and is carrying a balance of approximately $15,000 in credit card debt. Moreover, plaintiff has not worked outside the home for approximately 20 years, and the trial court found that it would take her not less than 3 years to update her college degree in Industrial Design and find employment. Plaintiff's sole source of income is derived almost entirely from pre-tax alimony payments of $12,220 per month; she also earns approximately $1,270 per month income from interests, dividends, and rental property.

Alternatively, the trial court valued defendant's separate estate at $1,095,630, approximately $190,000 more than plaintiff's. While defendant incurred legal expenses between $200,000 to $250,000, he owed less than $10,000 when the 20 September 2012 order was entered. His estate includes $39,500 cash-on-hand. Furthermore, defendant's pre-tax income is $40,937 per month. He has continued to represent commercial tenants in the same field "under the monikers of his companies HRS Retail and HRS Limited" and has maintained his relationships with Costco, Bed Bath & Beyond, and Ikea.

At $902,139.54 and $1,095,630 respectively, the parties' separate estates are nearly equal in value. Nonetheless a disparity of financial resources available to plaintiff to defray the expenses of litigation is apparent. Plaintiff would have to unreasonably deplete her relatively small resources to pay her recoverable attorneys' fees. *See Clark, supra.*

Furthermore, the record does not support the trial court's finding of fact #6, that there was insufficient evidence for it to determine what

portion of Allison Holstein's fees were recoverable. Upon review, we conclude that Holstein's testimony coupled with plaintiff's exhibits 5A and 5B constitute sufficient evidence to make the necessary calculation. Accordingly, we reverse the trial court's order and remand for a determination of reasonable attorneys' fees to be awarded to plaintiff.

## V. Costs

**[5]** Plaintiff seeks an additional $6,651.40 for the costs associated with the travel expenses and testimony of certain expert witnesses. We disagree.

If a category of costs is set forth in section N.C. Gen. Stat. § 7A–305(d), "the trial court *is required to assess the item as costs.*" *Priest v. Safety–Kleen Sys., Inc.*, 191 N.C. App. 341, 343, 663 S.E.2d 351, 353 (2008) (emphasis in original). Subsection (d)(11) requires a trial court to assess as costs expert fees for time spent testifying at trial provided the witness was subpoenaed. *Peters v. Pennington*, 210 N.C. App. 1, 26, 707 S.E.2d 724, 741 (2011). Additionally, "a trial court has the authority to award costs for a subpoenaed witness' time attending, but not testifying, at trial under N.C. Gen. Stat. 7A–314(d), as well as transportation costs under N.C. Gen. Stat. 7A–314(b). A trial court may not, however, assess as costs expert witness fees for preparation time." *Id.*

Plaintiff argues that she is entitled to the following expenses: $825 for Matt McDonald's trial testimony; $1,500 for Dr. Rebecca Appleton's travel and trial testimony; $2,713 for Christopher Mitchell's travel and testimony; $913.40 for Larry Batton's appraisal, travel, and testimony; and $700 for Carol Armstrong's travel and testimony. The record shows that only Dr. Rebecca Appleton was subpoenaed; the record does not indicate whether the remaining witnesses testified under subpoena. As to Appleton, the trial court found, and we agree, that plaintiff failed to prove how much time was devoted to her testimony as opposed to travel and preparation. We affirm the portion of the trial court's 20 September 2012 order awarding plaintiff $4,962.52 in court costs.

## VII. Conclusion

As discussed above, we vacate portions of the equitable distribution order, and remand. With regard to the classification and valuation of the TSCG C stock, we affirm. With regard to the 2006 profit distribution, the trial court is instructed to make further findings of fact. With regard to the classification of commissions earned after the date of separation, the trial court is instructed to make further findings of fact, and it is to consider the payment journals plaintiff attempted to enter into evidence

at trial. With regard to the award of attorney's fees and costs, the trial court is instructed to make a determination of reasonable attorneys' fees; we affirm the portion of the order awarding plaintiff certain costs. Based upon its revised findings and conclusions, the trial court shall then determine the total net value of the marital estate and allocate the property accordingly.

Affirmed in part; reversed and remanded in part.

Judges CALABRIA and STEPHENS concur.