STATE OF NORTH CAROLINA v. WILLIE BEE MILLER, JR.

No. 8526SC1079

(Filed 6 May 1986)

1. **Automobiles and Other Vehicles § 126.2; Criminal Law § 73.2— blood tests for alcohol at hospital emergency room—original report not available—admissible**

   In a prosecution for involuntary manslaughter arising from an automobile accident, the results of a blood test done within minutes of defendant's arrival at an emergency room were relevant to the issue of defendant's intoxication, constituted a record made in the usual course of business, were properly identified and authenticated even though the person who actually analyzed the blood in the laboratory was not present to testify, and were inherently reliable even though neither the original laboratory report nor a copy thereof was presented at trial. N.C.G.S. 8C-1, Rules 401, 803(6).

2. **Constitutional Law § 70— blood test report—person performing test not available—admission not unconstitutional**

   The admission of blood test results in an involuntary manslaughter prosecution arising from an automobile accident did not violate defendant's right to confront a witness under the Sixth and Fourteenth Amendments to the U. S. Constitution even though the person performing the test did not testify because defendant had the opportunity to vigorously cross-examine the nurse present when the blood was drawn and the attending physician and because the blood test is a reliable source of information.

3. **Criminal Law § 82.2— admission of blood test for alcohol—emergency room treatment—no violation of physician-patient privilege**

    The admission of the results of defendant's blood test in a prosecution for involuntary manslaughter arising from an automobile accident did not violate the physician-patient privilege because the court, in response to the district attorney's motion, found that the results of the test were needed for evidence and ordered the hospital to furnish reports of all tests and treatment of defendant. There was no prejudice from the lack of notice to defendant and from defendant's absence at the hearing on the district attorney's motion because defendant could have appealed the order and defendant had the opportunity to be heard at a pretrial *voir dire* hearing on his motion to suppress the results of the tests. N.C.G.S. 8-53.

APPEAL by defendant from *Sitton, Claude S., Judge.* Judgment entered 30 May 1985 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 12 February 1986.

    Defendant was charged and convicted of involuntary manslaughter.

    The State's evidence tended to show the following: On the night of 26 December 1984 at approximately 10:00 p.m. the vehicle driven by defendant overturned on the exit ramp of Brookshire Freeway at Beatties Ford Road in Charlotte, North Carolina. The passenger, Wencella Devon Alexander, died as a result of head injuries sustained in the accident. Defendant was rushed to the emergency room at Charlotte Memorial Hospital for treatment of his injuries. Within one or two minutes of defendant's arrival a "panel of labs," numerous diagnostic tests, were ordered for defendant. Due to defendant's screaming, flailing and generally combative behavior typical of head trauma patients, defendant's limbs were restrained. Defendant received a temporary alphabetical designation, "Mr. Z," for identification. A laboratory technician withdrew a sample of defendant's blood for analysis. A copy of the written report of the results was returned to the emergency room physician attending defendant at approximately 11:15 p.m. to 11:20 p.m. The report indicated, *inter alia,* that defendant's blood alcohol level was 254 milligrams percent or 0.254. The attending physician, Dr. Fogle, testified that he saw the copy of the written report which indicated a blood alcohol level of .254. Dr. Fogle also identified defendant's permanent hospital record, which was admitted into evidence. Neither the original laboratory report nor a copy thereof was available at the time of the trial. The nurse assigned to defendant testified with-

out objection that defendant "smelled strongly of alcohol." Angela Sikes testified without objection that she saw defendant driving down the road before the accident in a weaving manner.

Defendant testified in his own behalf as follows: He admitted that he had two drinks of Canadian Mist at about 7:45 p.m. and 8:30 p.m. before driving to Dobbs Catering Service at 9:00 p.m. to pick up the victim from work. The deceased was not finished with work, so defendant left to drink a half beer and returned approximately forty minutes later. Because defendant had a headache, the victim was driving the vehicle at the time of the accident.

The jury returned a verdict of guilty. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General James B. Richmond, for the State.*

*Isabel Scott Day, Public Defender, by Assistant Public Defenders Gail M. Phillips and Susan J. Weigand, for defendant appellant.*

JOHNSON, Judge.

[1] In one Assignment of Error defendant contends the court erred by admitting into evidence the results of defendant's blood test on the grounds that this information was irrelevant and constitutes inadmissible hearsay. In another Assignment of Error defendant contends that the results of the blood test were inadmissible for lack of authentication. We disagree with these contentions. We will address both Assignments of Error together.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, N.C. Rules Evid. Whether defendant was intoxicated at the time of the accident is a factual issue of consequence to the jury's determination of defendant's guilt or innocence of the charge of involuntary manslaughter. The accident occurred at approximately 10:00 p.m. Defendant's blood was tested one or two minutes after 11:00 p.m. The alcohol level of defendant's blood approximately one hour after the accident is relevant to the issue of defendant's intoxication.

The results of defendant's blood test, even though hearsay, are nonetheless admissible if they fall within the business records exception to the hearsay rule. Rule 803(6), N.C. Rules Evid. Records made in the usual course of business, made contemporaneously with the occurrences, acts and events, recorded by one authorized to make them and before litigation has arisen, are admissible upon proper identification and authentication. *Sims v. Charlotte Liberty Mutual Ins. Co.*, 257 N.C. 32, 35, 125 S.E. 2d 326, 329 (1962). Business records are defined to include the records of hospitals. Rule 803(6) Commentary, N.C. Rules Evid. In *Sims, supra*, the Court specifically applied the business records exception to hospital records.

Ms. Brenda Dasher, a registered nurse in the Emergency Department at Charlotte Memorial Hospital who was assigned to the emergency room the night of 26 December 1984, and Dr. William Fogle, Senior Surgery Resident at Charlotte Memorial Hospital who was on call the night of 26 December 1984, testified at the pre-trial *voir dire* hearing of the motion to suppress the test results and at the jury trial. Ms. Dasher was assigned to defendant when he first arrived in the major trauma area of the emergency room at approximately 11:00 p.m. Ms. Dasher testified, "As soon as he rolled in the door, one of the emergency room doctors saw him and initiated the order, the blood work and everything." Both Ms. Dasher and Dr. Fogle testified that it is part of routine emergency room treatment of trauma victims to order a laboratory panel, which includes the blood test at issue. Ms. Dasher testified, "They were drawing blood from him right after he came in, and that was why I was there assisting him." She testified that she saw the venipuncture technician draw the blood and leave to take the blood to the hospital "stat" laboratory, a special laboratory located close to the emergency room that performs emergency room work on a priority basis. An escort in the emergency room brought a copy of the laboratory report back to the emergency room and posted it on the "lab board." Ms. Dasher got the report from the lab board and took it to defendant's bedside at approximately 11:15 p.m.

Dr. William Fogle testified that he was called to observe defendant in the emergency room for the purpose of making a, surgical evaluation. He testified that he first saw defendant at about 11:00 p.m. and was with defendant when the nurse gave

him the results of the laboratory tests at approximately 11:15 p.m. Dr. Fogle testified that he saw the copy of the laboratory report and it indicated a blood alcohol level of .254. Dr. Fogle recorded the results in his admission notes, which are a permanent part of defendant's hospital record. He also stated that there is no record indicating who withdrew the blood or who analyzed the blood in the stat laboratory.

We hold the results of the blood test constitute a record made in the usual course of business, made contemporaneously with the events and recorded by one with authority to do so before litigation arose. Further, we hold the blood test results were properly identified and authenticated. Authentication is not undermined because the person who actually analyzed the blood in the stat laboratory was not present to testify as a witness. *State v. Grier*, 307 N.C. 628, 300 S.E. 2d 351 (1983). Authentication of records of regularly conducted activity is "by the testimony of the custodian or *other qualified witness*, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Rule 803(6), N.C. Rules Evid. (emphasis added). "Other qualified witness" has been construed to mean a witness who is familiar with the business entries and the system under which they are made. *State v. Galloway*, 304 N.C. 485, 492, 284 S.E. 2d 509, 514 (1981) (Where the ophthalmologist's technician testified regarding the ophthalmologist's medical records). Each, Ms. Dasher and Dr. Fogle, is a qualified witness. Their testimony sufficiently established the chain of custody. The possibility that blood samples were exchanged during the fifteen minutes in the laboratory is too remote to require exclusion of the evidence so obtained. Any weakness in the chain of custody goes to the weight of the evidence, not its admissibility. *Grier, supra*, at 633, 300 S.E. 2d at 354. Trustworthiness is the foundation of the business records exception. 1 H. Brandis on N.C. Evidence sec. 155 (1983 supplement). We find the blood test at issue, which was administered solely for the purpose of treatment, is a reliable source of information. The facts here raise no suspicion of untrustworthiness. Hospital protocol was strictly adhered to.

Defendant further challenges the authenticity of the test results based upon the fact that neither the original laboratory report nor a copy thereof was presented at trial. Under the circumstances to require such proffer is artificial and unduly burden-

some. The laboratory keeps the original of the written report three to four months. However, before the report is destroyed the laboratory enters the results into the hospital computer. Also, the results are immediately recorded in the individual patient's chart. Moreover, the physicians rely upon the accuracy of these entries as the basis for their diagnosis and treatment. The accuracy of the test result entries is adequately safeguarded. Absent an allegation supported by proof that hospital routine was in some manner deviated from, the entries in a patient's permanent hospital record are inherently reliable and admissible under the business records exception upon authentication by the proponent as here.

[2] In defendant's next Assignment of Error, defendant contends that admission of defendant's blood test results violated defendant's right to confront a witness as protected by the sixth and fourteenth amendments to the United States Constitution. We disagree.

The right of confrontation is not absolute and admission of reliable hearsay is not violative of the right of confrontation. *State v. Huffstetler*, 312 N.C. 92, 322 S.E. 2d 110 (1984), *cert. denied*, 471 U.S. 1009, 85 L.Ed. 2d 169, 105 S.Ct. 1877 (1985). In *Huffstetler*, the issue was whether the defendant was deprived of his sixth amendment right to confront his accusers when the court admitted into evidence the opinion testimony of a forensic serologist who based his opinion in part on the results of blood tests and the appellant was unable to cross-examine the person who actually performed the blood tests. Our Supreme Court held that the defendant was not denied his right to confront and cross-examine his accusers guaranteed by the sixth amendment because the information relied upon by the expert was inherently reliable and because the expert was available to be cross-examined. *Id.* at 108, 322 S.E. 2d at 121. Recognizing the factual distinctions between the two cases we are nonetheless persuaded by the Court's reasoning in *Huffstetler*. Because defendant had the opportunity to vigorously cross-examine both the nurse present when the blood was withdrawn and the attending physician concerning the procedures followed in withdrawing and analyzing defendant's blood and because we regard the blood test a reliable source of information, we hold defendant's right to confront his accusers guaranteed by the sixth and fourteenth amendments was not denied.

[3]  In defendant's last Assignment of Error, defendant contends that admission of the results of defendant's blood test violates the physician patient privilege protected by G.S. 8-53. We disagree.

G.S. 8-53 protects as privileged:

> any information which [the physician] may have acquired in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon.
> . . .

G.S. 8-53. However, G.S. 8-53 also provides that a resident or presiding judge in the district may "compel disclosure if in his opinion disclosure is necessary to a proper administration of justice." G.S. 8-53.

On 1 January 1985, the Office of the District Attorney, Mecklenburg County, filed a motion requesting the court to compel disclosure of defendant's medical records. On 2 January 1985, the court found "the results of the analysis of the Defendant's blood is needed for evidence" and ordered Charlotte Memorial Hospital to furnish the reports of all tests and treatment of defendant for 26 December 1984 and 27 December 1984. We find this constitutes substantial compliance with the statute G.S. 8-53. Defendant maintains that reversible error occurred regarding the 2 January 1985 order because defendant was not given notice of the hearing of the motion to compel disclosure and was not present when the motion was heard. Defendant's challenge is without merit for two reasons. One, defendant could have appealed the 2 January 1985 order. An appeal will lie from an order to compel disclosure of medical testimony and reports. *Lockwood v. McCaskill,* 261 N.C. 754, 136 S.E. 2d 67 (1964). Two, any prejudice to defendant was cured when defendant had the opportunity to be heard on this matter at the 28 May 1985 pre-trial *voir dire* hearing of defendant's motion to suppress the results of defendant's blood test.

Each of defendant's Assignments of Error is overruled.

No error.

Judges BECTON and MARTIN concur.