IN THE MATTER OF: S.D.J.

No. COA08-360

(Filed 2 September 2008)

### 1. Termination of Parental Rights— subject matter jurisdiction—failure to issue summons in name of juvenile

The trial court did not err in a termination of parental rights case by concluding it had subject matter jurisdiction over the proceeding because: (1) even though the record before the Court of Appeals contained no summons issued to the juvenile naming the juvenile as a respondent in this matter, the captions of the summonses naming the parents as respondents state the name of the juvenile, and the guardians ad litem for the juvenile certified that they accepted service of the petition on the juvenile's behalf; and (2) there was no indication in the record that respondent was prejudiced in any way by petitioner's failure to properly issue a summons directed to and naming the juvenile as a respondent in this matter.

**IN RE S.D.J.**

[192 N.C. App. 478 (2008)]

**2. Evidence— hearsay—business record exception—results of drug screens—letter**

The trial court did not err in a termination of parental rights case by admitting the reports of the results of drug screens and a letter from Alcohol and Drug Services (ADS), even though respondent contends the documents were hearsay, because the evidence was admissible as a business record exception under N.C.G.S. § 8C-1, Rule 803(6) when: (1) a social worker testified that she collected all but one of the samples used in the drug tests and then sealed and shipped the samples to the laboratory for testing; and (2) the social worker also testified that she relied on the reports in the ordinary course of her business and that the reports were collected as part of petitioner's record in this case.

**3. Termination of Parental Rights— neglect—sufficiency of findings of fact**

The trial court did not err by concluding that grounds existed to terminate respondent mother's parental rights based on neglect because the trial court's findings were supported by evidence presented at the hearing and were sufficient to establish a history of neglect and the probability of future neglect.

**4. Termination of Parental Rights— judicial notice—findings of fact—prior orders**

The trial court in a termination of parental rights case did not improperly take judicial notice of and base its findings of fact on all the prior orders in this case because: (1) it is well-established that a trial court may take judicial notice of earlier proceedings in the same cause; (2) the presumption in a bench trial is that the trial court will disregard incompetent evidence; (3) the pertinent findings of fact were supported by the testimony of the social worker at the termination proceeding and were not based on the prior orders; and (4) the findings were based on clear, cogent, and convincing evidence and support the trial court's conclusions of law that sufficient grounds existed to terminate respondent's parental rights to the juvenile based on a history of neglect and probability of repetition of the neglect.

Judge STROUD dissenting.

Appeal by respondent-mother from an order entered 28 December 2007 by Judge Sherry F. Alloway in Guilford County District Court. Heard in the Court of Appeals 23 July 2008.

IN RE S.D.J.

[192 N.C. App. 478 (2008)]

*Mercedes O. Chut for petitioner-appellee Guilford County Department of Social Services.*

*Smith, James, Rowlett & Cohen, L.L.P., by Margaret Rowlett, for appellee Guardian ad Litem.*

*Mary McCullers Reece for respondent-appellant mother.*

HUNTER, Judge.

Respondent-mother appeals from the trial court's order, entered 28 December 2007, terminating her parental rights to her minor child S.D.J. After careful review, we affirm.

On 4 June 2007, the Guilford County Department of Social Services ("petitioner") filed a petition for termination of respondent's parental rights in Guilford County District Court. As grounds for termination, the petition alleged respondent (1) willfully left S.D.J. in foster care or placement outside the home for more than twelve months without showing that reasonable progress under the circumstances had been made in correcting those conditions that led to the removal of S.D.J. from the home, and (2) is incapable of providing for the proper care and supervision of S.D.J. such that S.D.J. is a dependent juvenile.

The petition came on for hearing by the trial court on 16 August 2007 and continued on 24 September and 19 November 2007. On 28 December 2007, the trial court entered an order terminating respondent's parental rights to S.D.J. on the grounds alleged in the petition. Respondent appeals.

[1] As a preliminary matter, we must determine whether the trial court had subject matter jurisdiction over the termination proceedings in this case. It is well established that " '[t]he question of subject·matter jurisdiction may be raised at any time, even in the Supreme Court. When the record clearly shows that subject matter jurisdiction is lacking, the Court will take notice and dismiss the action *ex mero motu.*' " *In re A.F.H-G*, 189 N.C. App. 160, 160-61, 657 S.E.2d 738, 739 (2008) (quoting *Lemmerman v. Williams Oil Co.*, 318 N.C. 577, 580, 350 S.E.2d 83, 85-86 (1986)). This Court has held that a failure to issue a summons to the juvenile deprives the trial court of subject matter jurisdiction. *In re S.F.*, 190 N.C. App. 779, 779-80, 660 S.E.2d 924, 926-27 (2008) (citing *In re K.A.D.*, 187 N.C. App. 502, 502, 653 S.E.2d 427, 428-29 (2007). However, if a summons is not properly issued naming the juvenile as a respondent in a

**IN RE S.D.J.**

[192 N.C. App. 478 (2008)]

proceeding to terminate parental rights to the juvenile, the trial court will retain subject matter jurisdiction over the termination proceeding where the caption of an issued summons refers to the juvenile by name and a designated representative of the juvenile certifies the juvenile was served with the petition. *See In re J.A.P., I.M.P.,* 189 N.C. App. 683, 686, 659 S.E.2d 14, 17 (2008) (holding the trial court had subject matter jurisdiction over a termination of parental rights proceeding where no summons was issued naming the juveniles as respondents, but the attorney advocate for the juveniles' guardian ad litem certified that she accepted service of process regarding both juveniles).

Here, the record contains no summons issued to the juvenile, naming S.D.J. as a respondent in this matter, and no indication that a summons was ever actually issued to the juvenile. On 4 June 2007 two summonses were issued naming respondent mother, the legal father, and "Any Unknown Putative Father" as respondents in this matter. Respondent was served with a summons on 6 June 2007, and the legal father and unknown putative father were served by publication on 13, 20, and 27 June 2007. While S.D.J.'s name appears on the summons forms in the case caption, neither summons names S.D.J. as a respondent. The record does, however, contain two certificates of acceptance of service signed by two different guardians ad litem for the juvenile. Upon appointment by the court, it is the responsibility of the guardian ad litem to represent the juvenile in court and in all respects "to protect and promote the best interests of the juvenile[.]" N.C. Gen. Stat. § 7B-601(a) (2007). In furtherance of this responsibility, it is within the purview of a guardian ad litem to stand in for the juvenile and accept service of a petition on a juvenile's behalf. *In re J.A.P., I.M.P.,* 189 N.C. App. at 686, 659 S.E.2d at 17 (citing N.C. Gen. Stat. § 7B-1105 (2007)); *In re N.C.H., G.D.H., D.G.H.,* 192 N.C. App. 445, ——, —— S.E.2d ——, —— (2008) (subject matter jurisdiction was proper with the trial court where the summonses contained the names of the juveniles in the caption and the guardian ad litem for the juveniles certified that she was served with copies of the summonses).

Therefore, even though the record before this Court contains no summons issued to S.D.J., naming the juvenile as a respondent in this matter, because the captions of the summonses naming the parents as respondents state the name of the juvenile, and the guardians ad litem for the juvenile certified that they accepted service of the petition on the juvenile's behalf, we hold the trial court had subject mat-

ter jurisdiction to hear the petition. Further, we note that there is no indication in the record that respondent was prejudiced in any way by petitioner's failure to properly issue a summons directed to and naming S.D.J. as a respondent in this matter.

[2] Respondent first argues the trial court erred in admitting the reports of the results of drug screens and a letter from Alcohol and Drug Services ("ADS") because the documents were hearsay and fell under no recognized exception. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2007). Hearsay is inadmissible except when allowed by statute or the North Carolina Rules of Evidence. N.C. Gen. Stat. § 8C-1, Rule 802 (2007). One exception to the hearsay rule is the business record exception, which provides that business records of regularly conducted activity are not excluded by the hearsay rule, even though the declarant is unavailable as a witness. N.C. Gen. Stat. § 8C-1, Rule 803(6) (2007). A business record includes:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

*Id.* A qualifying business record "is admissible when 'a proper foundation . . . is laid by testimony of a witness who is familiar with the . . . records and the methods under which they were made so as to satisfy the court that the methods, the sources of information, and the time of preparation render such evidence trustworthy.' " *State v. Price,* 326 N.C. 56, 77, 388 S.E.2d 84, 95 (1990) (quoting *State v. Springer,* 283 N.C. 627, 636, 197 S.E.2d 530, 536 (1973)); *see also State v. Miller,* 80 N.C. App. 425, 429, 342 S.E.2d 553, 556 (" '[o]ther qualified witness' has been construed to mean a witness who is familiar with the business entries and the system under which they are made"), *appeal dismissed and disc. review denied,* 317 N.C. 711, 347 S.E.2d 448 (1986). While the foundation must be laid by a person familiar with the records and the system under which they are made, there is "no requirement that the records be authenticated by the per-

son who made them." *State v. Wilson*, 313 N.C. 516, 533, 330 S.E.2d 450, 462 (1985). Additionally, the foundational requirements of Rule 803(6) may be satisfied through the submission of:

> An affidavit from the custodian of the records in question that states that the records are true and correct copies of records made, to the best of the affiant's knowledge, by persons having knowledge of the information set forth, during the regular course of business at or near the time of the acts, events or conditions recorded . . . .

*In re S.W.*, 175 N.C. App. 719, 725, 625 S.E.2d 594, 598, *disc. review denied*, 360 N.C. 534, 635 S.E.2d 59 (2006).

In the present case, during the adjudicatory phase of the hearing, the trial court admitted the reports and the letter over objection by respondent's trial attorney, finding each was admissible under the business records exception to the hearsay rule. Here, a social worker in the employ of petitioner testified that she collected all but one of the samples used in the drug tests and then sealed and shipped the samples to the laboratory for testing. She further testified that she relied on the reports in the ordinary course of her business and that the reports were collected as part of petitioner's record in this particular case.

Respondent argues the trial court erred in admitting, over respondent's objection, her drug test results and the accompanying letter from ADS on the grounds that they fell under no exception to the rule against hearsay. We disagree.

Our Court's decision in *Miller*, 80 N.C. App. 425, 342 S.E.2d 553, is dispositive. In *Miller*, our Court found that the trial court did not err in allowing an emergency room nurse who ordered a blood test to testify at trial as a "qualified witness" regarding the trustworthiness of a blood test as a business record even though the nurse did not actually analyze the blood in the laboratory. *Id.* At 428-29, 342 S.E.2d at 555-56. We held, "the results of the blood test constitute a record made in the usual course of business" and that "[a]uthentication is not undermined because the person who actually analyzed the blood in the . . . laboratory was not present to testify as a witness." *Id.* at 429, 342 S.E.2d at 556. Similarly, in the present case, the testifying social worker collected the samples, sent the samples to the laboratory for testing and relied on the test results in the ordinary course of her business.

**IN RE S.D.J.**

[192 N.C. App. 478 (2008)]

Also apposite to the case at bar is our decision in *Barber v. Babcock & Wilson Construction Co.*, 98 N.C. App. 203, 390 S.E.2d 341 (1990), *reversed on other grounds on rehearing*, 101 N.C. App. 564, 400 S.E.2d 735 (1991). In *Barber*, we examined whether an employer in a workers' compensation case was qualified to authenticate the results of a test performed by a private laboratory under Rule 803(6). We found that "[a]lthough [the employer] was not personally knowledgeable about the scientific method used in obtaining the data, he was familiar with the system used by his company in obtaining tests' and filing the results with his office." *Id.* at 208, 390 S.E.2d at 344. Accordingly, we held that the employer was qualified to introduce the test results under the business records exception.

In the case at bar, petitioner's witness, in the course of regularly conducted business activity, collected respondent's sample, ordered the drug test and subsequently filed the results of the drug test with her office. As such, petitioner's witness was qualified to introduce the results of the drug test and the letter from ADS under the business records exception to the hearsay rule. Thus, we find that the trial court did not err in allowing the admission of the results of respondent's drug screens and a letter from ADS as hearsay evidence under the business records exception.

[3] Here, the trial court ultimately concluded, *inter alia*, that the juvenile continued to be neglected by respondent and terminated respondent's parental rights to the child under N.C. Gen. Stat. § 7B-1111(a)(1). A child is considered neglected "if the court finds the juvenile to be . . . a neglected juvenile within the meaning of G.S. 7B-101." N.C. Gen. Stat. § 7B-1111(a)(1) (2007). A neglected juvenile is defined as one

> who does not receive proper care, supervision, or discipline from the juvenile's parent, . . . ; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.

N.C. Gen. Stat. § 7B-101(15) (2007). Where a juvenile has not been in the custody of a parent for a significant period of time prior to the termination hearing, a trial court may find that grounds for termination exist upon a showing of a "history of neglect by the parent and the probability of a repetition of neglect." *In re Shermer*, 156 N.C. App. 281, 286, 576 S.E.2d 403, 407 (2003).

**IN RE S.D.J.**

[192 N.C. App. 478 (2008)]

The trial court's conclusion that grounds to terminate respondent's parental rights based on neglect are supported by the following, unchallenged findings of fact which are binding on this Court:

16. [Respondent] is not present today, and there has been no explanation for her absence [from the termination hearing].

17. The child is a neglected child, and the child was adjudicated neglected on April 13, 2006 after an Adjudicatory hearing by clear, cogent and convincing evidence.

. . .

19. Initially, when the child came into care, [respondent] was cooperative with [petitioner] and complying with her case plan; however, the circumstances changed around January or February, 2007.

20. [Respondent] has not visited with her child since February 12, 2007.

. . .

22. [Respondent] entered into a case plan where she was required to contact Ryan Wiese at ADS, follow through with any recommendations made by Mr. Wiese, attend all recommended programs on a regular basis, and submit to random drug screening for testing. Her visits were to be suspended if she had a positive drug screen, and they would be reinstated once she produced a clean screen.

. . .

24. [Respondent] was required in her case plan to follow through with mental heath appointments and take her medication as prescribed.

25. Initially [respondent] was complying with this, but is not more recently complying. She has not provided any documentation to [petitioner] that she is complying with these conditions.

. . .

27. [Respondent] was residing at 115 Brentwood Ave. from October 2006 until the summer of 2007.

28. The last time [petitioner] was able to confirm that [respondent] was in that home was on April 25, 2007. On April 25,

IN RE S.D.J.

[192 N.C. App. 478 (2008)]

2007, [a social worker] visited the home, and [respondent] told the [social worker] to leave and not come back.

29. The social worker did attempt to visit at the home in May, and [respondent] was not present at that time.

30. Sometime during the summer of 2007, [petitioner] confirmed that [respondent] was no longer residing at the 115 Brentwood address, in that the 115 Brentwood home was boarded up and padlocked.

31. [Respondent] indicated that she lived at the Sheraton Towers, but [petitioner] was unable to confirm that she lived at the Sheraton Towers.

32. The last conversation with [respondent] and [petitioner], was that she could be contacted at the Brentwood Address, and [respondent] gave the social worker two phone numbers.

33. The social worker has attempted to contact [respondent] on those two numbers, and to locate her at the Sheraton Towers and the Brentwood Avenue address, but [respondent] has not been located, and the telephone numbers are invalid.

. . .

37. In March 2007, [respondent] did not have any heat in [her] home; therefore, the child could not reside with her or visit with her there.

. . .

41. The social worker attempted to visit [respondent] at the Brentwood Address on May 4, 10, 11, and 14. [Respondent] was not present at those times.

42. [Respondent] has not provided [petitioner] with a verified address since April 2007.

43. [Respondent] periodically contacts [petitioner] and has periodically submitted to drug screens. But these drugs screens are done when she makes herself available, and they are not necessarily random.

See *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("[w]here no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal"). The trial court further found:

**IN RE S.D.J.**

[192 N.C. App. 478 (2008)]

38. In March of 2007, [respondent] began allowing a convicted sex offender to live with her. . . .

39. In April 2007, [respondent] still had no heat in her home . . . and still had the sex offender residing with her.

These findings are supported by evidence presented at the termination hearing and combined they are sufficient to establish a history of neglect and the probability of future neglect sufficient to terminate respondents parental rights to the juvenile. *See In re L.O.K., J.K.W., T.L.W. & T.L.W.*, 174 N.C. App. 426, 436, 621 S.E.2d 236, 242 (2005) ("the trial court's conclusion that grounds existed for termination under N.C. Gen. Stat. § 7B-1111(a)(1) is also supported by the court's findings establishing that respondent failed to maintain contact with her children for extended periods of time"); *In re Leftwich*, 135 N.C. App. 67, 72, 518 S.E.2d 799, 803 (1999) (trial court could properly find a probability of future neglect when respondent mother had not made meaningful progress in improving her lifestyle); *In re Davis*, 116 N.C. App. 409, 414, 448 S.E.2d 303, 306 (the parents' failure to "obtain[] continued counseling, a stable home, stable employment, and [attend] parenting classes" was sufficient to show a probability that neglect would be repeated if the child were returned to the care of the parents), *disc. review denied*, 338 N.C. 516, 452 S.E.2d 808 (1994).

[4] Respondent also argues the trial court erred by taking judicial notice of and basing its findings of fact on all the prior orders in this case because all of the orders were not based upon clear, cogent, and convincing evidence. It is well established, however, that " '[a] trial court may take judicial notice of earlier proceedings in the same cause.' " *In re J.B.*, 172 N.C. App. 1, 16, 616 S.E.2d 264, 273 (2005) (quoting *In re Isenhour*, 101 N.C. App. 550, 553, 400 S.E.2d 71, 73 (1991)). Equally well established is the presumption that, in a bench trial, the trial court will disregard any incompetent evidence. *In re Huff*, 140 N.C. App. 288, 298, 536 S.E.2d 838, 845 (2000). As discussed *supra*, the above referenced findings of fact are supported by the testimony of the social worker at the termination proceeding and were not based on the prior orders. These findings are based upon clear, cogent, and convincing evidence and support the trial court's conclusion of law that sufficient grounds existed to terminate respondent's parental rights to the juvenile based on a history of neglect and probability of repetition of the neglect. "Since we have concluded that the trial court properly concluded that the ground of neglect existed, we need not review the other ground relied upon by the trial court." *In*

*re L.O.K.*, 174 N.C. App. at 436, 621 S.E.2d at 243 (citing *In re B.S.D.S.*, 163 N.C. App. 540, 546, 594 S.E.2d 89, 93-94 (2004) ("[h]aving concluded that at least one ground for termination of parental rights existed, we need not address the additional ground of neglect found by the trial court")).

Affirmed.

Judge McGEE concurs.

Judge STROUD dissents in a separate opinion.

STROUD, Judge, dissenting.

For the reasons set forth in my dissenting opinion in *In re N.C.H., G.D.H., and D.G.H.* (No. COA08-413), filed simultaneously with this case, I respectfully dissent.