IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-133

 Filed: 19 November 2019

Buncombe County, Nos. 14CRS80463-64

STATE OF NORTH CAROLINA

 v.

JOSEPH MARIO ROMANO, Defendant.

 Appeal by defendant from judgment entered 4 June 2018 by Judge Gary M.

Gavenus in Buncombe County Superior Court. Heard in the Court of Appeals 4

September 2019.

 Attorney General Joshua H. Stein, by Assistant Attorney General Kimberly N.
 Callahan, for the State.

 Meghan Adelle Jones for defendant-appellant.

 BERGER, Judge.

 On April 19, 2016, this Court affirmed the trial court’s pre-trial order granting

Joseph Mario Romano’s (“Defendant’s”) motion to suppress a State Bureau of

Investigation (“SBI”) test result. State v. Romano, 247 N.C. App. 212, 785 S.E.2d 168

(2016) (“Romano I”). Both parties subsequently sought review of Romano I to our

Supreme Court, which “modified and affirmed,” and remanded to our Court for

“further remand to the trial court for additional proceedings.” State v. Romano, 369

N.C. 678, 695, 800 S.E.2d 644, 655 (2017) (“Romano II”).
 STATE V. ROMANO

 Opinion of the Court

 This case is now before us for a second time to determine whether the trial

court, upon remand from the State’s interlocutory appeal, should have granted

Defendant’s motion to dismiss because the evidence the State deemed “essential to

the case,” the SBI test result, was ordered suppressed. Defendant also argues, in the

alternative, that his supplemental motion to suppress medical records should have

been granted because the original motion to suppress encompassed all records related

to the blood draw on the day in question. We find no error.

 Factual and Procedural Background

 The factual history of this case has been discussed in Romano I and Romano

II. We adopt and include the pertinent factual history from Romano II, discuss the

procedural history of Romano I and II, and include additional procedural history as

needed to understand the legal issues herein.

 The record shows that defendant stopped his vehicle at a
 congested intersection in the middle of the day, left the
 vehicle while wearing his sweater backwards, and
 proceeded to stumble across four lanes of traffic.
 Defendant had a bottle of rum in his possession, and had
 vomited on himself and in his vehicle before exiting the
 SUV. When police arrived, defendant was incoherent with
 slurred speech; his eyes were bloodshot; he smelled
 strongly of alcohol; and he could not stand or sit without
 assistance.

 ....

 Defendant was arrested for driving while impaired (DWI),
 and, due to his extreme level of intoxication, defendant was
 transported to a hospital for medical treatment. Officer

 -2-
 STATE V. ROMANO

 Opinion of the Court

 Bryson requested the assistance of Sergeant Ann Fowler, a
 Drug Recognition Expert.

 Defendant was belligerent and combative throughout his
 encounters with law enforcement and medical personnel.
 At the hospital, medical staff and law enforcement
 attempted to restrain defendant. Medical personnel
 determined it was necessary to medicate defendant to calm
 him down. Sergeant Fowler told the treating nurse “that
 she would likely need a blood draw for law enforcement
 purposes.” Before defendant was medicated, Sergeant
 Fowler did not “advise[ ] [him] of his chemical analysis
 rights,” “request[ ] that he submit[ ] to a blood draw,” or
 obtain a warrant for a blood search. After defendant was
 medically subdued, the treating nurse drew blood for
 medical treatment purposes; however, the nurse drew
 more blood than was needed for treatment purposes and
 offered the additional blood for law enforcement use.
 Before accepting the blood sample, Sergeant Fowler
 attempted to get defendant’s consent to the blood draw or
 receipt of the evidence, but she was unable to
 wake him. . . .

 Sergeant Fowler did not attempt to obtain a warrant for
 defendant’s blood nor did she believe any exigency existed.
 Instead, she “expressly relied upon the statutory
 authorization set forth in [N.C.G.S. § ] 20-16.2(b),” which
 allows the taking and testing of blood from a person who
 has committed a DWI if the person is “unconscious or
 otherwise in a condition that makes the person incapable
 of refusal.” After taking possession of defendant’s blood,
 Sergeant Fowler “drove to the Buncombe County
 Magistrate’s Office and swore out warrants for the present
 charges,” and then returned to the hospital and served the
 warrants on defendant.

Romano II, 369 N.C. at 681, 693, 800 S.E.2d at 646-47, 654.

 On January 26, 2015, Defendant filed a pre-trial motion to suppress “any

analysis or the report thereof” resulting from the warrantless blood draw. On

 -3-
 STATE V. ROMANO

 Opinion of the Court

February 3, 2015, the State filed a motion for Defendant’s medical records related to

treatment received on February 17, 2014, which the trial court granted. After a

hearing on Defendant’s motion to suppress, the trial court filed an order suppressing

“[t]he blood seized by [Sergeant] Fowler and any subsequent test results performed

on the same by the SBI Crime Laboratory.”

 The State appealed the order and certified to this Court that the suppressed

evidence was essential to the prosecution of the case. On April 19, 2016, our Court

affirmed the trial court’s order suppressing the evidence. Romano I, 247 N.C. App.

at 212, 785 S.E.2d at 168. Both parties then petitioned our Supreme Court for

discretionary review and our Supreme Court in Romano II ultimately “modified and

affirmed” the decision of this Court, and remanded to our Court for “further remand

to the trial court for additional proceedings.” Romano II, 369 N.C. at 695, 800 S.E.2d

at 655. Our Supreme Court held “that N.C.G.S. § 20-16.2(b) is unconstitutional under

the Fourth Amendment as applied to defendant in this case,” and as a result, the trial

court correctly suppressed the SBI test result. Id. at 695, 800 S.E.2d at 655.

 Prior to the decision in Romano II, on April 25, 2016, the State filed a second

motion for medical records stating that the hospital’s first production of medical

records pursuant to the February 2015 order was for a date unrelated to the charged

offense. Eventually, the proper medical records were produced. The State then

 -4-
 STATE V. ROMANO

 Opinion of the Court

proceeded to try the case for habitual impaired driving and driving while license

revoked after impaired driving without reliance on the suppressed SBI blood test.

 Defendant filed a pre-trial motion to dismiss the charges on January 29, 2018.

Defendant also filed a supplemental motion to suppress medical records and 911 calls

(the “supplemental motion to suppress”)1 on February 6, 2018. At trial, the court

denied Defendant’s motion to dismiss, stating that “[o]bviously the ruling by the

Supreme Court is binding on the [S]tate as to the evidence that was dealt with by the

Court, but that does not prevent the [S]tate from proceeding to trial absent that

evidence.” The court also denied the supplemental motion to suppress.

 Defendant’s medical records, which included the results of a blood alcohol test

performed by the hospital, were admitted into evidence at trial. The State tendered

Paul Glover (“Glover”) as an expert in blood alcohol testing. Glover testified about

the instrumentation and methodology used by the treating hospital in testing

Defendant’s blood sample. After explaining how the hospital determined Defendant’s

alcohol concentration in milligrams per deciliter, Glover explained the method and

formula used in converting it to grams per 100 milliliters of whole blood. Based on

this formula, Glover testified Defendant had a blood alcohol level of .33 grams per

100 milliliters of whole blood.

 1 On appeal, Defendant only challenges the trial court’s denial of his supplemental motion to
suppress medical records. He does not challenge the trial court’s decision relating to the 911 calls.

 -5-
 STATE V. ROMANO

 Opinion of the Court

 Defendant was found guilty of habitual impaired driving and driving while

license revoked following impaired driving revocation. The trial court sentenced

Defendant to fifteen to twenty-seven months imprisonment, and he was ordered to

pay a $2,500.00 fine. Defendant appeals.

 Analysis

 I. Motion to Dismiss

 Defendant first argues the trial court erred when it denied his motion to

dismiss because this Court and our Supreme Court determined that the trial court

properly suppressed the SBI test result conducted by law enforcement. Specifically,

Defendant contends the State should not have been able to try the case against

Defendant upon remand because the SBI test result, which the State deemed

essential to convict Defendant, had been ordered suppressed. We disagree.

 A motion to suppress is a type of motion in limine. State v. McNeill, 170 N.C.

App. 574, 579, 613 S.E.2d 43, 46 (2005). A “decision on a motion in limine is not final”

because “a ruling on a motion in limine is a preliminary or interlocutory decision

which the trial court can change if circumstances develop which make it necessary.”

Id. at 581, 579, 613 S.E.2d at 46 (purgandum).

 “A trial court’s decision to grant a pretrial motion to suppress evidence ‘does

not mandate a pretrial dismissal of the underlying indictments’ because ‘[t]he district

attorney may elect to dismiss or proceed to trial without the suppressed evidence and

 -6-
 STATE V. ROMANO

 Opinion of the Court

attempt to establish a prima facie case.’ ” State v. Fowler, 197 N.C. App. 1, 28-29, 676

S.E.2d 523, 545 (2009) (quoting State v. Edwards, 185 N.C. App. 701, 706, 649 S.E.2d

646, 650 (2007)). In addition, prior to trial, the State may also elect to appeal to this

Court an order by the superior court granting a motion to suppress. N.C. Gen. Stat.

§ 15A-979(c) (2017). “The burden is on the State to show that it has the right to

appeal and has appealed in accordance with the requirements of the statute.” State

v. Judd, 128 N.C. App. 328, 329, 494 S.E.2d 605, 606 (1998). Therefore, after a

superior court grants a defendant’s motion to suppress, the State may elect to dismiss

the case, proceed to trial without the suppressed evidence, or appeal the order

suppressing the evidence prior to trial.

 Here, the State elected to appeal the trial court’s order suppressing the SBI

result. Ultimately, both this Court and our Supreme Court agreed that the SBI result

had been properly suppressed. These were interlocutory decisions, not final decisions,

and did not preclude the State from proceeding to trial without the suppressed

evidence upon remand. However, Defendant contends the State should not have

appealed the order granting the motion to suppress unless the State did not think it

could convict Defendant without the suppressed evidence because it certified that the

suppressed evidence was “essential to the case” in its appeal. We disagree.

 “[T]he State cannot appeal proceedings from a judgment in favor of the

defendant in a criminal case in the absence of a statute clearly conferring that right,”

 -7-
 STATE V. ROMANO

 Opinion of the Court

and statutes authorizing an appeal by the State in criminal cases “must be strictly

construed.” State v. Dobson, 51 N.C. App. 445, 446-47, 276 S.E.2d 480, 481-82 (1981).

The statutory authority which permits the State to appeal from superior court to this

Court is contained in Section 15A-1445 of the North Carolina General Statutes, which

states in pertinent part:

 (a) Unless the rule against double jeopardy prohibits
 further prosecution, the State may appeal from the
 superior court to the appellate division:

 (1) When there has been a decision or judgment
 dismissing criminal charges as to one or more
 counts.
 (2) Upon the granting of a motion for a new trial on
 the ground of newly discovered or newly available
 evidence but only on questions of law.

 (b) The State may appeal an order by the superior court
 granting a motion to suppress as provided in G.S. 15A-979.

N.C. Gen. Stat. § 15A-1445(a)(1)-(2), (b) (2017). Section 15-979 provides:

 (c) An order by the superior court granting a motion to
 suppress prior to trial is appealable to the appellate
 division of the General Court of Justice prior to trial upon
 certificate by the prosecutor to the judge who granted the
 motion that the appeal is not taken for the purpose of delay
 and that the evidence is essential to the case. The appeal
 is to the appellate court that would have jurisdiction if the
 defendant were found guilty of the charge and received the
 maximum punishment. If there are multiple charges
 affected by a motion to suppress, the ruling is appealable
 to the court with jurisdiction over the offense carrying the
 highest punishment.

 -8-
 STATE V. ROMANO

 Opinion of the Court

N.C. Gen. Stat. § 15A-979(c) (2017). Thus, Section 15A-979(c) sets out the

jurisdictional requirements for this Court to hear the State’s interlocutory appeal.

 Failure to comply with jurisdictional rules requires dismissal of the appeal.

State v. Webber, 190 N.C. App. 649, 652, 660 S.E.2d 621, 622 (2008) (“Unless

jurisdictional prerequisites are met, an appeal must be dismissed.”).

 [I]n looking at the purpose of N.C.G.S. § 15A-979(c), it is
 clear that this statute is intended to be a procedural
 safeguard for defendants against the State, rather than an
 insurmountable burden for the State. Our Courts have
 held that the certification requirement under N.C.G.S.
 § 15A-979(c) is paramount in that by failing to file a
 certificate pursuant to N.C.G.S. § 15A-979(c), the State
 may not pursue its appeal.

State v. Williams, 234 N.C. App. 445, 448, 759 S.E.2d 350, 352 (2014). Therefore, the

certification requirements under Section 15A-979(c) are procedural safeguards to

determine whether or not the State may pursue its appeal, not whether or not it may

pursue its underlying indictments.

 Here, the State complied with Section 15A-979(c)’s certification requirements

by certifying that its appeal was not taken for the purpose of delay and that the

evidence was essential to the case. Because the State complied with Section 15A-

979(c)’s certification requirements, this Court had jurisdiction to hear the appeal and

render a decision.

 This Court’s decision in Romano I affirmed the trial court’s order. On

discretionary review to our Supreme Court, it “modified and affirmed” the Romano I

 -9-
 STATE V. ROMANO

 Opinion of the Court

decision, and remanded to this Court for “further remand to the trial court for

additional proceedings.” Even though this Court and our Supreme Court agreed the

trial court properly suppressed the evidence, that did not impede the State from

proceeding to trial without the suppressed evidence since our appellate courts’

decisions on the motion to suppress were made prior to trial.

 Thus, after our appellate courts, on interlocutory appeal, affirm a superior

court order granting a motion to suppress, nothing in our statutes suggests that the

State may not elect to proceed to trial without the suppressed evidence. If the

General Assembly had intended such a procedure, it would have so provided. The

practical result of Defendant’s argument would require dismissal of every criminal

case in which a defendant’s pre-trial motion to suppress was granted and then upheld

on appeal. Such a result is neither found in statute nor is it grounded in the realities

of trial work. Trials are fluid and ever changing based on rulings by judges,

availability of witnesses and evidence, and the skillfulness of the attorneys. A piece

of evidence that was essential to trial strategy at one moment may not be significant

at the next based on any number of factors. To bind a party to a theory before a trial

ever begins runs counter to the practical realities of trial work. Instead, our statutes

and case law dictate that once our appellate courts decide, on interlocutory appeal,

whether a trial court properly ruled on a motion to suppress prior to trial, the State,

 - 10 -
 STATE V. ROMANO

 Opinion of the Court

on remand, may elect to dismiss the case or, as here, proceed to trial without the

suppressed evidence.

 Because the State was not prohibited from proceeding to trial without the

suppressed evidence, we now address whether the trial court erred when it denied

Defendant’s motion to dismiss. At trial, Defendant moved to dismiss the charges on

the ground that the State was estopped from adjudicating its case against Defendant

because the trial court suppressed the SBI test result, the evidence the State had

previously deemed essential to its case. Defendant made no alternative argument.

On appeal, Defendant renewed this same argument and makes no other argument

regarding the motion to dismiss. See State v. Walker, ___ N.C. App. ___, ___, 798

S.E.2d 529, 532 (emphasizing this Court only reviews arguments raised before the

trial court, especially if the argument made below is narrow in scope), review denied,

369 N.C. 755, 799 S.E.2d 619 (2017). As explained above, we hold the trial court’s

order suppressing the SBI test result did not prohibit or otherwise impede the State

from proceeding to trial. Accordingly, the trial court did not err in denying

Defendant’s motion to dismiss.

 II. Motion to Suppress

 Defendant also contends, in the alternative, the trial court erred when it

denied his supplemental motion to suppress and admitted Defendant’s medical

records, which contained the results of a blood alcohol test performed by the hospital.

 - 11 -
 STATE V. ROMANO

 Opinion of the Court

He specifically contends the trial court’s order granting his first motion to suppress

included the suppression of all records related to the blood draw from the day in

question. We disagree.

 Generally, our review of a trial court’s denial of a motion to suppress is “strictly

limited to determining whether the trial judge’s underlying findings of fact are

supported by competent evidence, in which event they are conclusively binding on

appeal, and whether those factual findings in turn support the judge’s ultimate

conclusions of law.” State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982).

“The trial court’s conclusions of law . . . are fully reviewable on appeal.” State v.

Hughes, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000). However, in this case, the

trial court did not make written findings of fact and conclusions of law. While neither

party challenges the trial court’s lack of written findings and conclusions of law when

it ruled on Defendant’s supplemental motion to suppress, we need to address it in

order to apply the appropriate standard of review.

 When a trial court is deciding a motion to suppress, “[t]he judge must set forth

in the record his findings of facts and conclusions of law.” N.C. Gen. Stat. § 15A-

977(f) (2017). A trial court is not required to enter a written order denying a motion

to suppress “[i]f the trial court provides the rationale for its ruling from the bench

and there are no material conflicts in the evidence.” State v. Wainwright, 240 N.C.

App. 77, 83, 770 S.E.2d 99, 104 (2015). “If these two criteria are met, the necessary

 - 12 -
 STATE V. ROMANO

 Opinion of the Court

findings of fact are implied from the denial of the motion to suppress.” Id. at 83, 770

S.E.2d at 104 (citations and quotation marks omitted). “If there is not a material

conflict in the evidence, it is not reversible error to fail to make such findings because

we can determine the propriety of the ruling on the undisputed facts which the

evidence shows.” Id. at 83, 770 S.E.2d at 104 (citations and quotation marks omitted).

“[A] material conflict in the evidence exists when evidence presented by one party

controverts evidence presented by an opposing party such that the outcome of the

matter to be decided is likely to be affected.” State v. Baker, 208 N.C. App. 376, 384,

702 S.E.2d 825, 831 (2010). “[A] material conflict in the evidence does not arise when

the record on appeal demonstrates that defense counsel cross-examined the State’s

witnesses at the suppression hearing.” Id. at 383, 702 S.E.2d at 830.

 In the present case, defense counsel requested the hearing on his supplemental

motion to suppress be heard during a voir dire of Glover to determine whether he was

an expert in blood alcohol testing. Prior to the voir dire hearing, Defendant

challenged the relevancy and prejudicial impact the medical records would have as a

whole and challenged the State’s ability to lay a proper foundation for Glover to opine

on the results of the blood alcohol test performed by the hospital. In response, the

State argued the medical records would be introduced under the business record

exception to the hearsay rule. The State further argued a proper foundation would

be laid for both the medical records and the results of the blood alcohol test performed

 - 13 -
 STATE V. ROMANO

 Opinion of the Court

by the hospital. In order to lay a foundation, the manager of the hospital’s medical

records department testified regarding the management of hospital records.

Additionally, a medical technologist testified regarding the hospital’s methods and

procedures for conducting laboratory tests. After the voir dire hearing concluded, the

trial court admitted Glover as an expert. The trial court then made an oral ruling

from the bench and denied Defendant’s supplemental motion to suppress and

provided the following rationale:

 At this time I’m also going to rule as to the medical records.
 I’m going to rule that the medical records are admissible as
 well as the blood test results contained therein, that they
 are, indeed, an exception under Crawford. That they are
 not testimonial because they were not – the blood wasn’t
 taken for the purposes of testimony in court or for the
 treatment of the Defendant on this date, and there has
 been no indication for lack of trustworthiness in those
 medical records, the testing of the blood. So I will allow the
 medical records to be admitted. I will deal with any issues
 with regard to any portion of those that may be more
 prejudicial than probative should that become a question
 and the jury wants to see the whole disk.

 Although minimal, this rational does provide sufficient findings and

conclusions to review on appeal. Also, there were no material conflicts in the evidence

as Defendant did not challenge the legitimacy of the medical records. After cross-

examining Glover during voir dire, defense counsel stated that there was nothing

wrong with the actual medical records but continued to contend that a proper

foundation had not been laid. The trial court then concluded the medical records

were not testimonial or lacking in trustworthiness. It also reserved any issues

 - 14 -
 STATE V. ROMANO

 Opinion of the Court

regarding whether any portion of the medical records were more prejudicial than

probative.

 Because the trial court provided its rationale from the bench and there were

no material conflicts in the evidence presented at the hearing on Defendant’s

supplemental motion to suppress, the trial court was not required to enter a written

order. Therefore, we now review the trial court’s conclusions of law.

 Defendant contends the holding in Romano II stands for the position that the

trial court’s order granting Defendant’s first motion to suppress included the

suppression of all records related to the blood draw because Romano II contained the

following two statements: (1) “the trial court correctly suppressed the blood evidence

and any subsequent testing of the blood that was obtained without a warrant,”

Romano II, 369 N.C. at 692, 800 S.E.2d at 653, and (2) “we affirm as modified herein

the Court of Appeals’ opinion affirming the trial court’s order suppressing any testing

of defendant’s blood.” Id. at 695, 800 S.E.2d at 655. Defendant’s argument is

misplaced.

 The order referred to in Romano II states the following: “The blood seized by

[Sergeant] Fowler and any subsequent test results performed on the same by the SBI

Crime Laboratory is hereby suppressed.” Therefore, the testing our Supreme Court

referred to concerned any law enforcement testing conducted on the blood Sergeant

Fowler seized. We further note the question of whether Defendant’s medical records,

 - 15 -
 STATE V. ROMANO

 Opinion of the Court

including blood testing results by medical personnel, should have been suppressed

was not before this Court or our Supreme Court.2 The only issue addressed in

Romano I and II was whether the blood seized by Sergeant Fowler and subsequent

law enforcement testing on the blood seized was properly suppressed.

 The trial court correctly concluded the admittance of Defendant’s medical

records did not violate Defendant’s rights under Crawford v. Washington, 541 U.S.

36 (2004).

 “The Sixth Amendment to the United States Constitution, made applicable to

the States via the Fourteenth Amendment, . . . provides that ‘[i]n all criminal

prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses

against him.’ ” Melendez-Diaz v. Massachusetts, 557 U.S. 305, 309 (2009) (quoting

Crawford v. Washington, 541 U.S. at 51). “A witness’s testimony against a defendant

is thus inadmissible unless the witness appears at trial or, if the witness is

unavailable, the defendant had a prior opportunity for cross-examination.” Id.

 Medical reports created for treatment-related purposes are not testimonial

statements for Confrontation Clause purposes. Id. at 312 n.2 (stating “medical

 2 We note the trial court granted the State’s first motion seeking Defendant’s medical records
on February 9, 2015. On March 31, 2015, the State filed its notice of appeal from the order suppressing
the SBI test result. Then, on April 25, 2016, prior to the filing of Romano II, the State filed a second
motion for medical records stating that the hospital’s first production of medical records pursuant to
the February order was for a date unrelated to the charged offense. It is unclear when the proper
medical records were actually produced. Nonetheless, it is clear the State did not have the medical
records it sought before it filed its notice of appeal from the order suppressing the SBI test result to
this Court or before it petitioned for discretionary review to our Supreme Court.

 - 16 -
 STATE V. ROMANO

 Opinion of the Court

reports created for treatment purposes” are not testimonial in nature).3

Furthermore, medical records may qualify as business records, State v. Miller, 80

N.C. App. 425, 428, 342 S.E.2d 553, 555 (1986), and therefore, may be admissible as

an exception to hearsay under the business records exception if properly

authenticated. N.C. Gen. Stat. § 8C-1, Rule 803(6) (2017).

 Business records stored electronically are admissible if (1)
 the computerized entries were made in the regular course
 of business, (2) at or near the time of the transaction
 involved, and (3) a proper foundation for such evidence is
 laid by testimony of a witness who is familiar with the
 computerized records and the methods under which they
 were made so as to satisfy the court that the methods, the
 sources of information, and the time of preparation render
 such evidence trustworthy.

State v. Crawley, 217 N.C. App. 509, 516, 719 S.E.2d 632, 637 (2011) (citation and

quotation marks omitted). “There is no requirement that the records be

authenticated by the person who made them.” Id. at 516, 719 S.E.2d at 637-38.

 At trial, the State called the nurse who withdrew Defendant’s blood on the day

in question and a custodian of the hospital’s medical records as witnesses. Their

testimony showed that the nurse on duty withdrew the blood sample under routine

procedure; a doctor of the hospital ordered that a serum alcohol test be conducted of

the blood sample; the hospital’s serum alcohol test was performed about an hour after

 3 Although unpublished, the following two cases similarly held the admittance of the
defendants’ medical records did not violate their rights under Crawford v. Washington or Melendez-
Diaz v. Massachusetts: State v. Wood, 225 N.C. App. 268, 736 S.E.2d 649 (2013) and State v. Howard,
237 N.C. App. 617, 767 S.E.2d 704 (2014).

 - 17 -
 STATE V. ROMANO

 Opinion of the Court

the blood draw; and the results of the serum alcohol test were recorded in milligrams

per deciliter and uploaded to Defendant’s medical file. Thus, the blood test was

conducted by the hospital and the records documenting the results of the blood test

were for medical treatment purposes and made and kept in the ordinary course of

business. The trial court did not err in holding that Defendant’s confrontation rights

were not violated by the admission of his medical records.

 Even if the results of a blood alcohol test performed by the hospital were

considered testimonial, Defendant’s rights were not violated under Crawford or

Melendez-Diaz. When “the State seeks to introduce forensic analyses, ‘[a]bsent a

showing that the analysts [are] unavailable to testify at trial and that petitioner had

a prior opportunity to cross-examine them’ such evidence is inadmissible under

Crawford.” State v. Locklear, 363 N.C. 438, 452, 681 S.E.2d 293, 305 (2009) (quoting

Melendez-Diaz, 557 U.S. at 311). However,

 when an expert gives an opinion, it is the expert opinion
 itself, not its underlying factual basis, that constitutes
 substantive evidence. Therefore, when an expert gives an
 opinion, the expert is the witness whom the defendant has
 the right to confront. In such cases, the Confrontation
 Clause is satisfied if the defendant has the opportunity to
 fully cross-examine the expert witness who testifies
 against him, allowing the factfinder to understand the
 basis for the expert’s opinion and to determine whether
 that opinion should be found credible. Accordingly,
 admission of an expert’s independent opinion based on
 otherwise inadmissible facts or data of a type reasonably
 relied upon by experts in the particular field’ does not
 violate the Confrontation Clause so long as the defendant

 - 18 -
 STATE V. ROMANO

 Opinion of the Court

 has the opportunity to cross-examine the expert. We
 emphasize that the expert must present an independent
 opinion obtained through his or her own analysis and not
 merely surrogate testimony parroting otherwise
 inadmissible statements.

State v. Ortiz-Zape, 367 N.C. 1, 8-9, 743 S.E.2d 156, 161-62 (2013) (purgandum).

 In the present case, the analyst who performed the hospital’s blood alcohol test

was not available to testify about the results of her chemical analysis. However, the

State called Glover, an expert in blood alcohol testing, to testify about his opinion

regarding Defendant’s blood alcohol level. On voir dire, Glover testified he was

familiar with the two methods of testing blood for alcohol and he was familiar with

the hospital’s policies and procedures for testing blood samples. After testifying about

how the hospital determined Defendant’s alcohol concentration in milligrams per

deciliter, Glover explained the method and formula used in converting it to grams per

100 milliliters of whole blood. Based on the formula, Glover testified Defendant had

a blood alcohol level of .33 grams per 100 milliliters of whole blood.

 Glover testified that in order to form his opinion, he needed the time of the

incident, the time of the blood collection, and the hospital’s reported blood

concentration. He explained, in order to answer these questions and reach his

opinion, he reviewed Defendant’s medical records and the District Attorney’s

documentation surrounding the investigation, including photographs and

statements. He also testified he relied on his background and experience and medical

literature on blood testing for alcohol. Thus, these sources allowed Glover to form an

 - 19 -
 STATE V. ROMANO

 Opinion of the Court

independent opinion obtained through his own analysis. Moreover, defense counsel

was able to cross-examine Glover and did cross-examine him. Because Glover’s

testimony was based on his own expert opinion, Defendant’s right to confront the

witnesses against him was not violated. See State v. Pless, ___ N.C. App. ___, ___,

822 S.E.2d 725, 732-33 (2018) (determining the defendant’s confrontation rights were

not violated when a chemist, who did not perform the chemical analysis of the seized

substance, testified at trial because she provided an independent basis for her

opinion).

 Accordingly, the trial court did not err when it denied Defendant’s

supplemental motion to suppress.

 Defendant further contends the admittance of the medical records was

prejudicial because, without the results of the blood test performed by the hospital,

there is a reasonable possibility that the jury would not have convicted Defendant.

See N.C. Gen. Stat. § 15A-1443(a) (2017). He specifically contends that, without the

result of the blood test performed by the hospital, there was insufficient evidence that

he operated the vehicle while under the influence of an impairing substance. This

argument is without merit.

 “A person commits the offense of habitual impaired driving if he drives while

impaired as defined in G.S. 20-138.1 and has been convicted of three or more offenses

involving impaired driving as defined in G.S. 20-4.01(24a) within 10 years of the date

 - 20 -
 STATE V. ROMANO

 Opinion of the Court

of this offense.” N.C. Gen. Stat. § 20-138.5(a) (2017). The essential elements of

driving while impaired under Section 20-138.1 are: “(1) Defendant was driving a

vehicle; (2) upon any highway, any street, or any public vehicular area within this

State; (3) while under the influence of an impairing substance.” State v. Mark, 154

N.C. App. 341, 345, 571 S.E.2d 867, 870 (2002) (citation omitted). A defendant ‘drives’

a vehicle when “he is in actual physical control of a vehicle which is in motion or

which has the engine running.” State v. Fields, 77 N.C. App. 404, 406, 335 S.E.2d 69,

70 (1985). Actual physical control of a vehicle can be evidenced by showing that “the

defendant sat behind the wheel of the car in the driver’s seat and started the engine.”

Id. at 406, 335 S.E.2d at 70. Thus, “once the car engine is running, the person behind

the steering wheel is considered to be driving or operating the car.” Brunson v.

Tatum, 196 N.C. App. 480, 486, 675 S.E.2d 97, 101 (2009).

 Here, the trial court instructed the jury it could find Defendant guilty of

impaired driving as follows:

 First, that the Defendant was driving a vehicle. Second,
 that the Defendant was driving that vehicle upon a
 highway or street within this state. Third, that at the time
 the Defendant was driving that vehicle, the Defendant: A,
 was under the influence of an impairing substance. Alcohol
 is an impairing substance. Defendant is under the
 influence of an impairing substance when the Defendant
 has consumed a sufficient quantity of that impairing
 substance to cause the Defendant to lose the normal control
 of the Defendant’s bodily or mental faculties or both to such
 an extent that there is an appreciable impairment of either
 or both of these faculties. And/or B, had consumed

 - 21 -
 STATE V. ROMANO

 Opinion of the Court

 sufficient alcohol that at any relevant time after the
 driving the Defendant had an alcohol concentration of 0.08
 or more grams of alcohol per 100 milliliters of blood. The
 relevant time is any time after the driving that the driver
 still has in the driver’s body alcohol consumed before or
 during driving.

(Emphasis added).

 In order to prove its case, the State introduced a witness who testified that he

called 911 to report that another driver wearing a gray sweater almost hit him while

at an intersection. The same witness further testified that the same driver then

stopped in the middle of the road, got out of the car with a bottle of alcohol in hand,

and stumbled off. A sergeant with the Asheville Police Department testified when he

arrived on scene that, although the vehicle was off and a key was not in the ignition,

vomit was all over the steering wheel and that the hood of the vehicle was warm to

the touch. Another sergeant testified that Defendant was wearing clothing that

matched the description provided by the caller. After hearing this evidence, coupled

with the fact that Defendant had been incoherent with slurred speech, had bloodshot

eyes, smelled strongly of alcohol, and had been unable to stand or sit without

assistance, there is not a reasonable possibility that the jury would not have convicted

Defendant of driving while impaired.

 The holding in Romano II did not preclude the introduction of Defendant’s

medical records into evidence. The trial court did not err when it admitted the

medical records, including the results of the blood alcohol test performed by the

 - 22 -
 STATE V. ROMANO

 Opinion of the Court

hospital, and admittance of the medical records did not prejudice Defendant’s case.

Therefore, the trial court did not err when it denied Defendant’s supplemental motion

to suppress medical records.

 Conclusion

 The trial court did not err when it denied Defendant’s motion to dismiss the

charges and Defendant’s supplemental motion to suppress his medical records.

 NO ERROR.

 Judges INMAN and MURPHY concur.

 - 23 -